W. A. McLeod, *Plaintiff in Error,* v. W. J. Williams, *et al., Defendants in Error.*

Opinion Filed February 10, 1917.

1. A failure to comply strictly with those provisions of tax laws which are intended for the guidance of officers in the conduct of business devolved upon them, designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected, will not usually render the proceeding void; but where the requisites prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and a disregard of them might and generally would injuriously affect his rights, they cannot be disregarded, and a failure to comply with them will render the proceeding invalid.

2. An applicant for a tax deed who takes it when the authority to execute it has not been exercised as required by mandatory provisions of law, does so at his peril.

3. Where the *prima facie* effect given a tax deed by the statute

is overcome, it is the duty of the party claiming under the tax deed to show its validity.

4. The statute requires that the county commissioners at a meeting for correcting and reviewing the county assessment, shall immediately thereafter ascertain and determine the amount of money to be raised by tax for county purposes, and authorize the levy of a tax, and provides that every such determination and levy so made shall be entered at large upon the records of the board.

5. An assessment of lands in the name of a person who is not the owner or legal representative of the owner or as unknown or to the same owner as for the previous year when not returned for taxation by the owner, is not authorized by law.

6. The statute contemplates that the clerk of the Circuit Court shall sign an endorsement of a tax certificate made by him.

7. Where the Clerk of the Circuit Court does not give the notice of an application for a tax deed in substantial compliance with the statute, the tax deed is void.

8. Notice of an application for a tax deed must be mailed to the owner of the lands or to the person last paying the taxes thereon, or else the tax deed will be ineffectual.

Writ of Error to Circuit Court for Santa Rosa County; A. G. Campbell, Judge.

Judgment affirmed.

*Clark & Thompson,* for Plaintiff in Error;

*McGeachy & Lewis* and *Watson & Pasco,* for Defendants in Error.

WHITFIELD, J.—McLeod brought ejectment to recover possession of N. W. ¼ of N. E. ¼ and N. E. ¼ of N. W. ¼, Sec. 1, T. 3 N., R. 29 E., containing 80

acres.  Trial was had upon a plea of not guilty.  The plaintiff introduced a tax deed dated December 19, 1914, based upon a tax certificate issued to the State dated September 2, 1912, for unpaid taxes of 1911.  A conveyance of the timber on the land dated September 28, 1910, executed by W. J. Williams, Sr., to the Yellow Pine Land Company, the rights under the conveyance to cease six years from January 1, 1911, was properly excluded by the court, it not being material to the issue.

The plaintiff rested and the defendant offered testimony to show the tax deed to be void on grounds that (1) the county commissioners in making the tax levy for 1911 did not "ascertain and determine the amount of money to be raised by tax for county purposes," etc., as required by Section 2, Chapter 6157, Acts of 1911; (2) the property was not assessed "in the name of the owner or legal representative of the owner, or as 'unknown'," or "to the same owner as for the previous year" as required by sections 20 and 26, Chapter 5596, Acts of 1907; (3) the tax certificate was not assigned by the clerk's signature to the assignment endorsed thereon, as required by Section 568, General Statutes of 1906; (4) notice of the issuance of the tax deed was not given as required by Section 575, General Statutes of 1906.

At the conclusion of the testimony the court declared the tax deed to be void and directed a verdict for the defendants on which judgment was rendered and the plaintiff took writ of error.

Tax deeds duly issued pursuant to the statute are "declared to be *prima facie* evidence of the regularity of the proceedings from the valuation of the land described * * * to the date of the deed."  But when a substantial defect in "the proceedings" that affect the validity of the tax deed, is shown, the tax deed is ineffectual as title un-

less the holder thereof sufficiently overcomes the show-
ing made of the defect in the proceedings.

A failure to comply strictly with those provisions of
tax laws which are intended for the guide of officers in
the conduct ·of business devolved upon them, designed to
secure order, system and dispatch in proceedings, and
by a disregard of which the right of parties interested
cannot be injuriously affected, will not usually render
the proceeding void; but where the requisites prescribed
are intended for the protection of the citizen, and to
prevent a sacrifice of his property, and a disregard of
them might and generally would injuriously affect his
rights, they cannot be disregarded, and a failure to
comply with them will render the proceeding invalid.

An applicant for a tax deed who takes it when the
authority  to execute it has not been exercised as re-
quired by mandatory provisions of law, does so at his
peril.

Where the *prima facie* effect given a tax deed by the
statute is overcome, it is the duty of the party claiming
under the tax deed to show its validity.   Clark-Ray-
Johnson Co. v. Williford, 62 Fla. 453, 56 South. Rep.
938; Starke v. Sawyer, 56 Fla. 596, 47 South. Rep. 513.

Section 2, Chapter 6157, provides that "The Board of
County Commissioners of every county, at a meeting for
correcting and reviewing the county assessment, shall,
immediately thereafter ascertain and determine the
amount of money to be raised by tax for county pur-
poses, including the current expenses, interest on bonded
debt, bridges and county buildings, and to meet the ex-
penses, they are hereby authorized to levy a tax of not
more than five mills upon the dollar on the real and
personal property of the county; and every such deter-

mination and levy so made shall be entered at large upon the records of the Board of County Commissioners."

The minutes of the board of county commissioners put in evidence show the following entries:

"According to advertisement, Board met this date, notice having been given that they would be in session on Tuesday, August 1st, 1911, to hear complaints and receive testimony as to the value of any property as fixed and assessed by the County Assessor of Taxes.

"The Assessor presented his Tax Roll for the year 1911, and after examination the Tax books showed that the valuation of all taxable property of the county to be 4, 689, 058, the Board therefore made the following levy for the year 1911 to-wit:

"For general revenue 3 mills or thirty cents on the One Hundred Dollars of taxable property. For fine and forfeiture fund one-half mill, or five cents on the One Hundred Dollars. For road fund 3 mills or thirty cents on the One Hundred Dollars. For bridge and building fund one and a half mills, or fifteen cents on the One Hundred Dollars. For County schools six and a half mills, or sixty-five cents on the One Hundred Dollars of taxable property. .

"The Board of Public Instruction filed their estimate for the school year beginning July 1st, 1911, and ending June 30th, 1912, and asked that a tax of 6½ mills be levied, and on motion was allowed_____

"There being no further business, Board adjourned."

Manifestly, these entries do not show that the county commissioners did as expressly required by the statute "ascertain and determine the amount of money to be raised by tax for county purposes" etc. Nor do the entries show that such determination was entered at

large upon the records of the board of county commissioners.

The land was assessed in 1910 to W. A. McLeod and in 1911 to the Yellow Pine Land Company. It does not appear that the latter company returned the land for assessment.

Sections 20 and 26, Chapter 5596, Acts of 1907, contain the following:

"The County Assessor of Taxes shall ascertain by personal inspection, where not already sufficiently acquainted therewith, the value of the lands and assess them at their full cash value in the name of the owner or legal representative of the owner, or as 'Unknown.' and set down in the assessment roll following and opposite the description of the lands the name of the owner or his or her legal representative, and when the land has not been returned for assessment on or before the first day of April in each year, by the owner or legal representative of the owner, the County Assessor of Taxes shall enter the word, 'Unknown,' in the column of the assessment roll provided for the name of the owner, or his or her legal representative.

"All assessments shall be legal which shall be assessed to the same owner as for the previous year; Provided, That the owner does not return it for taxation."

It appears that the land was conveyed to W. J. Williams, Sr., in 1910 by the Yellow Pine Land Company. Obviously the land was not assessed in 1911 to the owner W. J. Williams, Sr., or as unknown or "to the same owner as for the previous year," who was W. A. McLeod, since the assessment for 1911 was to the Yellow Pine Land Company who did not own the land, but did own the timber. The statute provides for assessing tim-

ber rights separate from the lands. The assessment was not made in accordance with the statute.

Sections 568 and 573, General Statutes of 1906, contain the following:

"568. All tax certificates heretofore or hereafter issued, whether to the State or individuals, shall be transferable by endorsement at any time before they are redeemed, or a tax deed is executed therefor."

"573. Any person may purchase any certificate of land sold or certified to the State for taxes from the clerk of the circuit court of the county wherein such land is situated * * * and the endorsement of such certificate by such clerk officially, with the date and amount received, shall be sufficient evidence of the transfer and assignment thereof."

The tax certificate on which the tax deed was based shows that the endorsement of the assignment to W. A. McLeod has no signature at all to it, the clerk's official seal and official designation appearing, but no signature. The statute necessarily contemplates the affixing of the name of the clerk to the assignment of the tax certificate.

Section 575 of the General Statutes of 1906, mandatorily requires the clerk to mail a copy of the prescribed notice of application for tax deed to the owner of the lands or to the person last paying taxes on said property.

Where the Clerk of the Circuit Court does not give the notice of an application for a tax deed in substantial compliance with the statute, the tax deed is void. Hempel v. Consolidated Land Co., 69 Fla. 277, 67 South. Rep. 915.

It appears that a copy of the notice was mailed to M. E. Wilson, an officer or agent of the Yellow Pine Land Company, but he is not shown to have been agent

of the owner of the land or that he was the person last paying taxes on the land. Hightower v. Hogan, 69 Fla. 86.

As the tax deed under which the plaintiff claimed title to the land was ineffectual to convey title because of the fatal defects in the proceedings constituting the assessment and the issue of the tax deed, there was no error in directing a verdict for the defendants, and the judgment is affirmed.

BROWNE, C. J., and TAYLOR, SHACKLEFORD and ELLIS, JJ., concur.