J. C. Newsom v. Belle Mead Development Corporation,
*et al.*

179 So. 160.
Division A.
Opinion Filed February 14, 1938.

*Francis P. Conroy* and *Crawford & May,* for Plaintiff in Error;

*B. F. Brass,* for Defendants in Error.

Buford, J.—In an ejectment suit the plaintiff claimed title and right of possession to the lands under a deed and mesne conveyances established by stipulation.

The defendant claimed under a tax deed.

The plaintiff described the land as: "A certain tract or parcel of land, situated, lying and being in Volusia County, State of Florida, known and described as follows, to-wit:

Lot two (2) Block Six (6), Mason & Carswell's Subdivision of Holly Hill of the Fleming Purchase of the Thomas Fitch Grant, according to map in Map Book 2, page 90, of record in Public Records in the office of the Clerk of the Circuit Court of said County."

The plea was *not guilty*.

In the tax deed the description was as follows: "* * * situated and being in the County and State aforesaid, and described as follows, to-wit: N½ of Lot 2, Block 6, M. & C. Holly Hill, S½ of Lot 2, Block 6, M. & C. Holly Hill, containing ____ acres, more or less."

A jury having been waived and the trial as to law and facts having been submitted to the trial judge, the trial judge stated his findings of fact and rendered judgment in favor of the defendant.

Two questions are involved. The first is, whether or not the description contained in the tax deed was sufficient to convey title to the lands described in the plaintiff's declaration, and the second is whether or not if the description was insufficient on its face parol, testimony could be resorted to for the purpose of showing that the lands described in the tax deed were identical with the lands described in the declaration.

It must be borne in mind that this was not a suit to foreclose a lien on the chancery side of the docket but was a law action and the tax deed was relied upon not as the evidence of a lien but as a muniment of title.

It is well settled in this jurisdiction that the description of property in a tax deed must be certain in itself or at least capable of being made certain by matters referred to in the deed itself as relating to the description, and evidence *aliunde* not referred to in the deed can not be used to ascertain the land intended to be conveyed. See Jarrell

v. McRainey, 65 Fla. 141, and 144, 61 Sou. 260; Dixon v. Cocoa, 106 Fla. 855, 145 Sou. 748.

In Tax Securities Corporation v. Borland, *et al.*, 103 Fla. 63, 137 Sou. 151, we said:

"It will be seen from the foregoing recitals of the proceedings that the defendants based their attack on the validity of the tax deed upon two general propositions. The first was that the assessment was invalid and the second was that the deed was not issued in conformity with the necessary statutory requirements. It is not needful to discuss the validity of the assessment as there appears a fatal defect in the issuance of the tax deed which invalidates it as evidence of title, though it may constitute a sufficient basis on which to ground a suit to foreclose a tax lien under the provisions of Chapter 14572, Acts of 1929."

In Miller v. Lindstrom, 45 Fla. 473, 33 Sou. 521, it was held:

"A description of lands on an assessment roll so faulty as not to warn the owner of the charge upon his land, or to advise possible purchasers what land is to be sold, will invalidate the assessment.

"A description of land in the assessment roll, as lot 1, Assessor's Pierson, is insufficient to support a tax deed, it being shown in evidence that there was no such map as Assessor's Pierson on record, but that there were recorded maps designated respectively, 'Assessor's plat of C. F. Pierson's addition to Pierson's' and 'Assessor's subdivision of E½ NE¼ and NE¼ of SE¼ of Sec. 33, T. 14 S., R. 28 E., at Pierson.' "

In that case the description used, we think, was more definite than the description which was used in the tax deed here under consideration.

The insufficiency is accentuated by the fact that the record

shows that there was a municipality known as Holly Hill in Volusia County, Florida, not far distant from the subdivision known as Mason & Carswell's Subdivision of Holly Hill of the Fleming Purchase of the Thomas Fitch Grant according to the map in Map Book 2, page 90, or record in Public Records in the office of the Clerk of the Circuit Court of said County.

In Vol. 26, page 357, R. C. L., the text says: "A description in an assessment which is inherently defective cannot be supported by extrinsic evidence." This Court has applied that rule to descriptions in tax deeds where the deeds were relied upon as muniments of title, but has applied a more liberal rule where the tax deed or the tax sale certificates was relied on only as the evidence of a lien. This is because that when the certificate or deed is relied upon as a lien the defendant, the owner at the time the certificate or deed was issued, in the proceedings to enforce the lien is given the opportunity to redeem from such lien as may have been created and is given notice of the claim of the lien on the particular property involved. See Tax Securities Corporation v. Borland, *supra.*

In the case of Power v. Bowdle, 3 N. Dak. 107, 54 N. W. 404, which was cited with approval by this Court in Jarrell, v. McRainey, *supra,* and Dixon v. Cocoa, *supra,* it was said:

"It is manifestly true that if the symbol writing can be established as a common custom, by a finding of fact based upon testimony, it must follow that its non-existence as a common custom can be certified in the same manner. To illustrate our meaning, let us suppose that, instead of standing upon his objection to filing the amended answer, plaintiff's counsel had seen fit to appear and cross-examine defendant's witnesses, and then had offered rebutting testi-

mony sufficiently strong to have overcome defendant's testimony, as we think would not have been at all difficult to do. Then in the hypothetical case the finding of the trial court as to the usage must have been the exact opposite of that which is before us. But shall so important a matter as the existence or non-existence of a general usage of language or symbol writing in describing land turn upon the varying financial abilities of suitors, or the uncertain vigilance and skill of counsel in arraying testimony, where the amount of testimony, from the nature of the case, is practically inexhaustible? There is, we think, practically no limit to the number of witnesses pro and con who will honestly testify to the result of their personal experiences and observations as to the prevalence and extent of the custom. In one case the affirmative side will preponderate, and in the other the negative. But to place the public revenues and titles to land upon such a shifting basis would be to rest them upon a foundation of quicksand. This argument has been anticipated, and to meet it Counsel cite 2 Greenl. Ev. 249. We quote from the author a paragraph which counsel have italicized in their brief: 'And, after having been frequently proved in the course of successive legal investigations * * * will take notice of it without further proof.' According to this, the courts are not to take cognizance of a usage until it has been 'frequently proved.' When not proved at all, or when disproved, the holdings would, according to this, be different. But the learned commentator is here confining his observations to a particular class of special customs, i. e., 'usages of trade.' It would have been nearer the mark, we think, from the standpoint of defendant's counsel, to have cited the previous section, 248. There the author is treating of a still wider class of 'special customs,' viz.: 'Local customs'—'established by common con-

sent and uniform practice from time immemorial.' But in both sections of the treatise the learned commentator is confining his remarks to 'special customs.' As has been shown, such customs and usages are very frequently proven in court as a means of interpreting contracts and sometimes to annex terms to contracts. But reference to the averments of the amended answer shows that the idea of a special custom is distinctly negatived by the answer; nor would counsel contend that a mere special custom should receive judicial sanction as a means of building up title to land. A description in the tax roll, adjudged to be valid, in one county or locality in the state, must be held good in all parts of the state; otherwise, chaos in tax proceedings and in land titles would supervene.

"The considerations already advanced have satisfied a majority of this court that the averments as to a general usage of language pleaded in the amended answer present a state of things which ought not to be left to the chances of *nisi prius* trials, and be permitted to be proved or disproved, as it might turn out. Hence, we shall sustain plaintiff's assignment of error predicated upon the order of allowing the amended answer to be served and filed. The Chief Justice (Judge Bartholomew), while fully agreeing with the majority of the court in holding that the descriptions in question are without the sanctions of any general custom or law, and hence are insufficient as a basis of taxation, prefers to rest his concurrence on this branch of the case upon a somewhat different line of reasoning. I quote his language: 'A description of realty in an assessment roll, to be sufficient, must be such a one as the law recognizes. It is not enough that it be such as may be, in fact, understood, or often or generally used. It must be such as must be understood in the sense that the law will not listen to

the declaration that it is not understood. A defective or ambiguous description in a deed or contract may be cured by ascertaining the intention of the parties to the instrument, and giving effect to such intention. But this cannot apply to an assessment. Tax proceedings are *in invitum*, and there are no contracting parties. Primarily, the description must be such that it must be understood by, and will not mislead, the owner. It must also go further, and be such as must be understood by all persons desiring to purchase at tax sale. Theoretically, this includes all persons capable of contracting. A description that must be thus generally understood should have a more certain basis than a mere fact, because ignorance of fact can always be used as an excuse or defense. It must be based upon the law, and this may be upon an express statute authorizing the description, or it may be upon common law, or, what is the same thing, custom."

This appears to us to be sound enunciation and we approve it as such.

We hold the description to be insufficient to convey the title to lands by tax deed. Therefore, the judgment is reversed.

So ordered.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur in the opinion and judgment.