A. A. COULT, *et ux.*; JOE P. WALKER; THE SECURITY LAND AND INSURANCE COMPANY, a corporation; W. V. KNOTT, as State Treasurer and *ex-officio* Insurance Commissioner of the State, and as Trustee; and THE SECURITY LAND AND INVESTMENT COMPANY, a corporation, v. MCINTOSH INVESTMENT COMPANY.

182 So. 594.
Opinion Filed July 7, 1938.

142

*Claude Ogilvie,* for Plaintiffs in Error;
*Gray & Johnson,* for Defendant in Error.

BROWN, J.—This writ of error is from a final judgment in ejectment proceedings terminating in favor of plaintiff. The controlling question submitted to the trial court was the validity of a tax deed issued to the plaintiff on March 18, 1935, based on a tax certificate dated August 3, 1931, the property having been sold as the property of Mayor Realty Company for unpaid taxes for the year 1930.

The McIntosh Investment Company filed its declaration in ejectment, in the statutory form, against A. A. Coult and Gladys Coult, his wife, (shown to have been the owners of the legal title from June 5, 1930, until tax deed issued); Joe P. Walker; The Security Land & Insurance Co.; W. V. Knott, as State Treasurer and *ex-officio* Insurance Commissioner of the State of Florida and as Trustee; and the Security Land & Investment Co. Mr. Knott, as State Treasurer, etc., held by assignment from Security Land & Investment Co. a mortgage for $22,000.00 executed by the Coults June 5, 1930, (the date on which they acquired title), to one of the corporate defendants, assigned to the other, and by it assigned to Knott on June 23, 1930.

The Security Land and Insurance Co. and W. V. Knott, as State Treasurer and *ex-officio* Insurance Commissioner of the State of Florida and as trustee, filed their plea of not guilty to the declaration, and Mr. Knott filed a separate plea denying possession of the property, or the receipt of any of the profits. Thus the pleas admitted the possession of the defendant Security Land & Insurance Co., and put the title to the property in issue.

None of the other defendants filed any pleadings whatever.

Upon the issues thus made by the pleadings, the parties went to trial. After introduction of all the evidence by the parties, counsel for plaintiff made a motion for a directed verdict. The verdict was granted, and the court thereupon

instructed the jury to bring in a verdict in favor of plaintiff, which they did. Motion for new trial was denied. Judgment for plaintiff was entered, with award of writ of possession; the matter of damages having been waived by plaintiff.

Writ of error was taken from the final judgment in the names of each of the parties made defendants below, including those who failed to appear or plead to the declaration.

The first question presented is whether the failure of the clerk to make an effort to ascertain the name and address of the owner of the land and mail him a copy of the notice of application for a tax deed on the land, is a valid defense to an ejectment suit brought on such tax deed as an absolute conveyance of title.

The plea of not guilty in ejectment puts in issue the title to the lands in controversy. See 5044 (2) C. G. L. 1927; Dallam v. Sanchez, 56 Fla. 779, 47 So. 871; Buesing v. Forbes, 33 Fla. 495, 15 So. 209; Phillips v. Lowenstein, 91 Fla. 89, 107 So. 350. Such plea admits defendant's possession at the time the action was instituted and in order for the defendant to deny possession, he must do so by a special plea to that effect. Section 5044 (2) C. G. L. 1927. It is not inconsistent to file a plea of not guilty, which puts title in issue and admits possession, with a special plea denying possession. Gill v. Graham, 54 Fla. 259, 45 So. 845.

The burden, in this case, was on the plaintiff, to prove, by a preponderance of the evidence, that it had superior title to the property in question. By introducing in evidence the tax deed, which on its face appeared to be valid, plaintiff made out a *prima facie* case (Sec. 1003 C. G. L.; Clark v. Ccohran, 79 Fla. 788, 85 So. 250), and thereupon

the burden shifted to the defendants, who attempted to show that the tax deed was invalid because not issued according to law. The court admitted the tax deed in evidence, over the objections of defendants, with the understanding that they would be permitted, if they could, to show its invalidity.

Upon the point raised by the first question presented, D. S. Banner, Deputy Clerk of the Circuit Court, testified that notices of the application for the tax deed were mailed to the Mayer Realty Co. and to Charles Mayer, the address of both being 210 South Main Street, Orlando, Florida, they having paid taxes for certain years previous to the tax deed. The parties stipulated that the records of Orange County show that A. A. Coult and Gladys Coult, his wife, have been vested continuously with the fee simple title to the premises from June 5, 1930, to March 18, 1935, when said tax deed was issued by the clerk of the circuit court to plaintiff. D. S. Banner, deputy clerk, further testified that no notices were mailed to A. S. Coult and Gladys Coult, his wife (the record owners), or to any other parties than those already mentioned; that he did not make any inquiry as to who the owner of the property was, other than the usual procedure of going to the last assessment roll and seeing who paid the taxes for the two years preceding the year represented by the tax certificates; that no effort was made by the clerk to ascertain who was the fee simple owner of the property prior to issuance of the tax deed. There was no evidence that the clerk or his deputy *knew* who owned the property at the time of publication of notice, which knowledge, or the lack of it, is made important in view of the language of Section 1001, Comp. Gen. Laws, which provides for such mailing of notice to the owner "if such owner is known to the clerk." If the clerk had such knowledge,

the statute requires him to mail copy of the notice to the owner.

Section 1001 C. G. L., in effect at the time of the issuance of the tax deed on March 18, 1935, provided that no tax deeed should issue for lands sold for taxes until the clerk of the court should give at least 30 days' notice of application for such deed by publishing such notice once a week in some newspaper in the county, or in the event there is no newspaper in the county, by posting the notice at least 30 days at the court house door and at two or more public places in the county. Compliance with the requirements of this section is jurisdictional, as we shall presently show.

Section 1001 C. G. L., likewise in effect at the time of the issuance of the tax deed, gave the form of notice for application for tax deed, thus required to be published, and then provided:

"It shall be the duty of the clerk issuing such notice to mail a copy of said notice of application for tax deed to the owners of the property for which a tax deed is applied, if such owner be known to said clerk. But this requirement is directory only, and the failure of the clerk to mail such notice to the owner of the property involved in said application shall not affect the validity of the tax deed issued pursuant to such notice.

This quoted portion of the statute was enacted as part of Chapter 12409, Acts of 1927, which to that extent amended Section 777 of Rev. Gen. Stats. of 1920, and hence cases cited in the brief of counsel which were decided by this Court involving tax deeds issued prior to the effective date of the 1927 Act cannot aid in an interpretation of this provision of the statute.

Section 777 of Rev. Gen. Stats. of 1920, following the language of Chapter 4888, Laws of 1901, provided that "The clerk shall also mail a copy of said notice of application for

tax deed to the owner of lands for which a tax deed is applied for. If the owner is unknown, then such notice shall be delivered or mailed to the person last paying taxes on said property." In a number of cases, this Court held that this provision was mandatory, required the clerk to make reasonable inquiry, and failure to comply therewith rendered the tax deed invalid. But, as above shown, the Legislature, in 1927, changed the statute to read as above set forth, and expressly made this provision as to mailing notice directory and plainly says that the failure of the clerk to comply therewith shall not affect the validity of the tax deed.

In the case of Tax Securities Corporation v. Borland, 103 Fla. 63, 137 So. 151, this Court, speaking through Mr. Justice BUFORD, said:

"The provisions of the statute relative to notice of issuance of tax deed are jurisdictional so far as the authority of the clerk of the circuit court to issue such deed is concerned. The statute provides for process by the publication and serving of notice of the application for tax deed by which the owner is foreclosed of his right of redemption. This process may be substituted by process in foreclosure, if foreclosure is resorted to."

It is contended that this quoted statement from the case of Tax Securities Corporation v. Borland, *supra,* indicates that the mailing of the notice to the owner, as well as the publication of the notice of application for a tax deed, is jurisdictional, but a careful reading of the entire opinion shows that the exact question we are now dealing with was not decided in that case. But the holding of the Court, speaking through Mr. Justice BUFORD, was:

"Section 1 of Chapter 14572, *supra,* must be construed with the other provisions of the Act and when so construed the provisions of this section will apply in these cases where

foreclosure of a tax certificate or of a tax deed is resorted to to enforce the lien for taxes and to foreclose adversely interested parties of all claim of title or right of redemption in such property. In such cases the complainant stands upon his lien which he seeks to foreclose by virtue of which foreclosure a title absolute may be acquired and does not stand upon title vested in himself. In such cases the defendant has the benefit of due process and his day in court to redeem.

"In ejectment, however, where the complainant stands on a tax deed all the provisions of Section 1 and Section 16 of Chapter 14572, *supra,* may not be applicable.

"Before one may be deprived of his right of redemption which exists up until the time the tax deed is issued, and it appears to have been extended by the Act here under consideration until the day of a decree in foreclosure, if foreclosure is resorted to, the provisions of the statute relative to notice of issuance of tax deed are jurisdictional so far as the authority of the Clerk of the Circuit Court to issue such deed is concerned. The statute provides for process by publication and serving of notice of the application for tax deed by which the owner is foreclosed of his right of redemption. This process may be substituted by process in foreclosure, if foreclosure is resorted to." * * *

"It will be observed that Section 16 of Chapter 14572, *supra,* only applies to tax sale certificates and deeds held and owned by the State of Florida, or any person, firm or corporation, at the time of the adoption of the Act. Therefore, there was no attempt upon the part of the Legislature to validate a material irregularity appearing in the record of the issuance of a tax deed which should be issued after the date of the Act. It has been repeatedly held in this State that where the Clerk of the Circuit Court does not give the notice of application for the tax deed in sub-

stantial compliance with the statute the deed is void. Sanders. v. Collins, 62 Fla. 273, 57 So. 342; Clark-Ray-Johnson Co. v. Williford, 62 Fla. 453, 56 So. 938; Johnson v. Du-Pont, 63 Fla. 200, 57 So. 670; McLeod v. Williams, 73 Fla. 338, 74 So. 408. * * *

"The statute Section 778 R. G. S., 1002 C. G. L., provides that proof of publication or posting of notice as required in preceding sections, and the costs thereof, shall be filed by the Clerk before any tax deed shall be issued. This is for the purpose of giving constructive notice to interested parties that the deed will issue unless the amount of taxes and costs, with interest thereon, are paid on or before the published date. In this case the record shows that proof of publication was not made by the publisher until the 28th day of July, which was fourteen days after the date of the tax deed.

"For the reasons stated it must be held that the issuance of the tax deed in this case did not divest the owner of the right of redemption. Such tax deed might constitute the basis for a suit under the provisions of Chapter 14572 to foreclose the tax lien evidenced thereby, but it is insufficient upon which to maintain an action in ejectment."

In view of the fact that the Legislature had, by statutes now appearing as Sections 1000 to 1002, inclusive, of Comp. Gen. Laws of 1927, provided for notice to the owner by publication of the application for tax deed, we think it was within the power of the Legislature to so amend Section 777 of Rev. Gen. Statutes of 1920 (1001 C. G. L.) as to make the provision relating to the duty of the clerk to mail a copy of the notice to the owner merely directory, and to further provide that the clerk's failure to mail such notice would not affect the validity of the tax deed issued pursuant to the notice of application for tax deed, notice of which had already been explicitly provided for by publi-

cation. See 4 Cooley on Taxation, 4th Ed., Section 1559; Huling v. Kaw Valley Ryl & Imp. Co., 130 U. S. 559, 32 Law Ed. Whether this was a wise change in the previously existing statutory law might present a very debatable question of public policy, but this Court is dealing only with the question of legislative power. We think that, in the circumstances, the requirement of due process was met. The meaning of the statute as so amended is perfectly clear, hence there is no need to apply the rule that where there is ambiguity in a statute, that construction should be given which would tend to protect the land owner and taxpayer when this can be done without doing violence to the intent and purpose of the statute. In discussing statutes regarding the right of redemption from tax sales, Cooley on Taxation, *supra,* in Section 1552, very appropriately says:

"The statutes which give the right are to be regarded favorably and construed with liberality. Abundant reason for this is assigned in the cases which recognize the rule. It has been justly remarked that the right of the government to sell lands for taxes, as it is accustomed to do, can only be maintained on 'the absolute sovereignty of the State in the exercise of its taxing power. But it is a severe exercise of power. To divest ownership, without personal notice and without direct compensation, is the instance in which a constitutional government approaches most nearly to an unrestrained tyranny. Whatever tends to modify this right is favorable to the citizen, and ought to be liberally construed, on the principle that remedial statutes are to be beneficially expounded. Redemption is the last chance of the citizen to recover his right of property. Consequently the right of the party cannot be defeated by any failure of an officer to make the proper record, and sale after a redemption will be a nullity. The owner is not required to redeem from an illegal sale. But the court cannot by con-

struction extend the time or vary the terms of the statute under which the right may be exercised."

We come now to the discussion of plaintiff in error's second contention, which is that the clerk was without jurisdiction or power to issue the tax deed because the proof of the publication of notice of application for said tax deed had not been filed by the clerk before the deed was issued. Defendant in error claims that this contention is based upon a false assumption of fact. But the legal proposition involved, that such proof of publication must be filed with the clerk before he is authorized to issue the tax deed is settled by the statute itself, Section 1002 C. G. L., and this requirement was held to be mandatory and jurisdictional in the case of Tax Securities Corporation v. Borland, 103 Fla. 63, 137 So. 151, hereinabove quoted.

Nor did Chapter 14572, Laws of 1929, as construed in the subsequent case of Overstreet v. Gordon, 121 Fla. 180, 163 So. 477, destroy the effect of this jurisdictional requirement of the already existing statute. The exact question presented for decision in that case was whether the tax deed was invalidated by reason of the fact that the County Commissioner had, at their February meeting, before the tax sale in August, 1931, selected *two* newspapers for the publications of delinquent tax sales for that year instead of one as required by the statute, 969 C. G. L. Failure to properly designate the newspaper in which such publication was to be made, had, prior to the adoption of Chapter 14572, been held to constitute a fatal defect. In Overstreet v. Gordon it was held that the designation of two newspapers instead of one was a mere formal defect which, under Section 1 of Chapter 14572, did not affect the validity of the tax deed, and in the course of the opinion by Mr. Justice DAVIS, it was said:

"The policy of Chapter 14572, particularly Section 1 thereof, was to abolish purely formal defenses against the validity of tax deeds, whether issued pursuant to administrative proceedings or not. The statute applies to all classes of tax deeds when judicially attacked in any case wherein it is made to appear that a valid tax deed could have been lawfully issued against the delinquent lands described in such tax deeds had the merely procedural misprisions of the tax officers (such as designating the official tax sale newspaper and the like) not occurred and where it is either affirmatively established or admitted that there was at the time of the tax sale, an actual tax delinquency for which such tax sale was held. However, Chapter 14572, *supra,* was amended by Chapter 17442, Acts of 1935, enacted at the 1935 session of the Legislature, but the 1935 amendatory Act can have no retroactive legal effect as against the vested rights of those holders who purchased tax sale certificates prior to May 31, 1935 (the date upon which the amending law become effective) and subsequent to June 20, 1929. * * *

"In the foregoing connection it is to be observed that no attack is made here on the publication of the notice of issuance of the tax deed, simply on the organ of publication of the notice of tax sale two years and more earlier. Thus the case is to be distinguished from the case of Tax Securities Corporation v. Borland, 103 Fla. 63, *supra,* and like cases, because the legal publication of the required notice of application for tax deed is final process given for the purpose of cutting off the delinquent's right of redemption and is not to be dispensed with. On the other hand, notice of the tax sale is merely procedural and may be constitutionally dispensed with by the Legislature in its entirety so long as the taxpayer's right to redeem from the sale after it is held is preserved, and the rights of the taxpayer are

maintained in a requirement for proper notice of application for issuance of tax deed before they are finally cut off."

It will thus be seen that the Court drew a distinction between jurisdictional requirements, which were not affected by Section 1 of Chapter 14572, and mere procedural or administrative acts or omissions, which might, under the policy laid down by that Act, be disregarded. And certainly the owner had no right to complain because he was given two published notices of the tax sale instead of one. In State v. Lummus, 111 Fla. 746, 149 So. 650, it was held that "the jurisdictional notice to taxpayer that land is about to be taken for tax delinquency is that required to be given by publication before issuance of tax deed; not notice of tax sale."

It being clear that the statute (1002 C. G. L.) requires that proof of the publication or posting of the notice of application for tax deed *shall be filed by the clerk before any tax deed shall be issued,* and this requirement being jurisdictional in its nature, it follows that if the defendants in the court below introduced evidence sufficient to overcome the recitals in the tax deed and to show that such proof was not filed by the clerk before the tax deed issued in this case, then the tax deed was invalid. The court below held that defendants did not produce sufficient proof on that point, and we cannot say that the trial court erred in that respect. The statute, 1003 C. G. L., provides that the tax deed "shall be *prima facie* evidence of the regularity of the proceedings from the valuation of the land by the assessor to the deed, inclusive."

It is true that the testimony of Deputy Clerk Banner, who was placed on the stand by the plaintiffs in error, does show that the file mark had not been written or stamped upon said proof of publication before the tax deed was issued, but taking his testimony as a whole we think it author-

ized the trial court to find that, while said documentary proof had not been stamped "filed," it had been actually filed, as a matter of fact and of law, and was still on file in the clerk's office, when the tax deed was issued. Witness Banner, as shown on pages 24 and 25 of the transcript, testified on this point as follows:

"On Cross-Examination.

"Q. You published a notice as required by the Statute in the usual way?

"A. Yes, sir, notice was published.

"Q. And proof of that publication was filed in your office and that was before the time you issued the deed?

"A. Yes, sir. Proof of publication is with the application here.

"Q. Where did you have that proof of publication?

"A. It is made part of the application before the deed is issued. We don't issue the deed until the proof of publication is on file, but they weren't filed at this time. We have been filing them lately.

"Q. That was in the office?

"A. It was attached to this application before the deed was issued.

"Q. As part of your practice, isn't it a fact that you clamp all these papers together?

"A. It is clamped together at the time the deed is issued.

"Q. And that was part of the file at the time the deed was issued?

"A. Yes.

"By The Court:

"Q. Are you sure proof of publication was there at the time the deed was issued?

"A. Yes, sir. Positive."

A paper is "filed" when it is delivered to the proper officer and received by him to be kept in his official custody. The usual file marks are but one evidence of the filing. Franklin County Commissioners v. State, *ex rel.* Patton, 24 Fla. 55, 3 So. 471; Willingham v. State, 21 Fla. 788; Jacksonville Street R. Co. v. Walton, 42 Fla. 54, 28 So. 59, 66; Vickers v. Glenn, 102 Fla. 535, 136 So. 326. Indeed, the file mark is not conclusive evidence of filing in all cases. Vickers v. Glenn, *supra;* Spencer v. Gomez, 114 Fla. 688, 154 So. 858. Our own cases appear to be in line with those from other jurisdictions. See Masterson v. Southern R. Co. (Ind. App.) 82 N. E. 1021, 1023; Bade v. Hibberd, 50 Ore. 501, 93 Pac. 364, 365; Goodwin v. Bickford, 20 Okla. 91, 93 Pac. 548, 551, 129 A. S. R. 729; Tood v. Peterson, 13 Wyo. 513, 81 Pac. 878, 880; Day & Congleton Lumber Co. v. Mack, 139 Ky. 587, 69 S. W. 712, 714.

The third question presented is whether payment to the clerk of the proper amount for the redemption or purchase and surrender of all other outstanding subsequent certificates covering said land, is a condition precedent to the issuance of a tax deed as an absolute title of conveyance, as distinguished from the lien evidenced by said tax deed, when plaintiff, in an ejectment suit, claims under such tax deed against the original owner.

Section 12 of Chapter 14572, Acts of 1929, purporting to amend Section 1003 C. G. L., in effect when this tax deed was issued, provided that the holder of any tax certificate could at any time two years after its issuance, obtain a tax deed for the land, by applying to the clerk of the circuit court as provided by law, and by surrendering the certificate and paying the proper amount "for the redemption or surrender of all other outstanding subsequent certificates," covering the land, and by paying certain fees to the clerk. And the form of tax deed prescribed by both Section 1003

C. G. L. and Section 12 of Chapter 14572, contained recitals showing compliance with these requirements, and provided that the tax deed should constitute *prima facie* evidence of the regularity of the proceedings theretofore had. Furthermore, the form of tax deed prescribed contained a clause stating: "provided, however, said lands shall continue subject and liable for any unpaid taxes thereon." The tax deed here involved followed the form thus prescribed.

In construing this section of the Act, Section 12 of Chapter 14572, Acts of 1929, this Court, speaking through Mr. Justice WHITFIELD, in the case of Allison Realty Co. v. Graves Inv. Co., 115 Fla. 48, 155 So. 745, after reviewing this and various other statutory provisions, said:

"* * * When a tax deed is applied for under Section 12, Chapter 14572, Acts of 1929 (Ex. Sess.), the applicant must surrender a proper tax sale certificate as a predicate for the tax deed, and must pay 'the proper amount for the redemption or surrender of all other outstanding subsequent certificates covering said land'; and the statute requires the tax deed to state that the land conveyed 'shall continue subject and liable for any unpaid taxes thereon'; and outstanding tax sale certificates represent unpaid taxes. When a tax deed is issued without the statutory payment of outstanding tax sale certificates or other tax liens on the land, such tax deed is unauthorized by law, and the deed does not eliminate outstanding tax liens. See Sedgwick County Com'rs v. Conner, 121 Kan. 105, 245 P. 1030; Dennison v. City of Keokuk, 45 Iowa 266.

"* * * The State cannot be sued, so all tax liens held by the State must be satisfied before a tax deed is issued or before final foreclosure decree; otherwise the tax deed cannot lawfully be issued, and if issued, would be subject to 'unpaid taxes' (Section 12, c. 14572) : * * *"

To the same effect see Moore v. Allen, 115 Fla. 187, 155 So. 752, but these cases should be read in connection with Goulden v. Nanireka Corporation, 119 Fla. 328, 161 So. 284.

The tax deed, following the statutory form, recites that "said applicant has redeemed (or purchased and surrendered) all other outstanding subsequent tax certificates, covering said land." To rebut this *prima facie* presumption that the outstanding subsequent certificates were redeemed or purchased and surrendered, D. S. Banner, deputy clerk, was put on the witness stand by defendants, plaintiffs in error here, and gave the following testimony pertaining thereto:

"Q. I believe you said that in 1928 those taxes on those premises were paid by Mr. Charles Mayer?

"A. Yes.

"Q. And in 1929 they were paid by Mr. Charles Mayer?

"A. Yes.

"Q. And in 1930 they were paid by Mayer Realty Co.?

"By Mr. Gray: We object. He has gone over this once.

(No ruling.)

"A. 1930 and 1931 were neither paid, and there were certificates issued by (for) those.

"The Court: I think it's proper. (Exception.)

"Q. Please state who paid them in 1930. That's the year for the basis of this particular tax deed, is it not?

"A. If the taxes weren't paid the certificates were sold.

"Q. To Mr. Kennard?

"A. Yes.

"Q. And in 1931 were the taxes paid?

"A. No, they were not. They were sold.

"Q. Has anyone ever paid them?

"A. Not as yet.

"Q. In 1932 were the taxes paid?

"A. Yes, by Charles Mayer.

"Q. Were they paid or was the certificate redeemed?

"A. There was a certificate issued and it was redeemed by Charles Mayer.

"Q. And in 1933 they were assessed to whom?

"A. Henry Mayer.

"Q. Were those taxes ever paid?

"A. I really couldn't say without looking at the records.

"Q. Didn't we look those records up three days ago, and you told me those taxes were never paid in 1933?·

"Mr. Ogilvie: We would like five minutes recess to let him refresh his memory from the record on that point. The statute requires only payment of taxes to date, and it is very material * * *. We want to show that the recitation in that sheet is not the fact; that the subsequent taxes have not been paid, and are still due the State.

"The Court: I am willing for you to attack the jurisdiction of the Clerk to issue the deed * * *. But I think I will have to deny your request for indulgence to get the testimony you ask about.

"Q. Mr. Banner, does this record here before you indicate whether or not the 1934 taxes have been paid?

"A. No, it does not.

"Q. You handled the issuance of this tax deed, did you?

"A. Yes, sir.

"Q. You don't recall that the 1933 and 1934 taxes were not paid?

"A. No.

"Q. You do not recall that the fact was that the 1933 and 1934 State and county taxes were not paid by the application to this tax deed?

"By Mr. Gray: Objected to as immaterial and irrelevant. It is going back to the recitation in the deed.

"By The Court: Let him answer. (Exception.)

"A. Not at the time the tax deed was issued.

"Q. These were not paid?

"A. Not at that time."

It appears that the defense of failure to redeem or purchase and surrender all outstanding subsequent tax certificates, is not available here, because the testimony of this witness does not show that any of such certificates were not redeemed or purchased and surrendered prior to issuance of the tax deed. The testimony of this witness related to the payment of taxes for certain years. It did not go into whether or not the tax certificates for those years, if outstanding at the time the tax deed issued, were redeemed or purchased and surrendered. The taxes for the years concerning which the witness was interrogated could have been unpaid, as the witness testified, and yet the tax certificates for all of those years could have been either redeemed or purchased or surrendered. Payment of taxes for a certain year and redemption or purchase and surrender of the tax certificate for that year are two entirely different things. The testimony of this witness, being the only testimony on the subject, failed to rebut the *prima facie* presumption of the correctness of the recitals in the tax deed that all subsequent outstanding tax certificates had been redeemed or purchased and surrendered prior to the issuance of the tax deed. And the Coults, the record owners when tax deed issued, did not appear nor plead to the declaration.

Since it is not made to appear wherein the trial judge committed reversible error in conducting the trial of the case, the judgment of the court below should be and it is hereby affirmed.

Affirmed.

WHITFIELD, BUFORD and CHAPMAN, J. J., concur.