**W. L. KESTER v. NELLIE L. COWAN BOSTWICK** (formerly Nellie L. Cowan) a widow, **WILCHAR HOLDING COMPANY,** a Florida corporation, suing for her use and benefit, and **GEORGE O. BUTLER,** also suing for her use and benefit.

15 So. (2nd) 201                                    June Term, 1943
July 30, 1943                                        En Banc
Rehearing Denied October 12, 1943

438

*Miller & Fitzsimmons, McCune, Hiaasen & Fleming* and *Vincent C. Giblin,* for appellant.

*Milam, McIlvaine & Milam,* for appellees.

PER CURIAM:

On September 9, 1936, W. L. Kester by the tax deed route acquired title to forty-eight lots at Pompano Beach in Broward County. Early in 1937, he took possession of these lots and began to improve by grading, paving, and landscaping and by erecting thirty-two dwellings and twenty-nine garages on them which improvements totalled more than $100,000 and were completed in 1938.

In September, 1940, Nellie L. Cowan Bostwick instituted action in ejectment to recover said properties including mesne profits of approximately $18,000 per annum for about four years they were held by defendant under the tax deed. At the conclusion of the trial, the jury returned a directed verdict for the plaintiff as to title to the property thus holding the tax deed void and found for the defendant as to mesne profits. Judgment was entered accordingly and defendant appealed from that part adjudicating the tax deed to be void. Plaintiff appealed from that part denying mesne profits.

A number of questions are argued but it is admitted that the question of primary importance turns on the validity vel

non of the tax deed under which Kester claims title to the forty-eight lots of land in dispute.

Plaintiff below assailed the tax deed for insufficiency of description in the notice of application therefor and for failure to mail the last known owner notice of application for the tax deed when advertised as the law directs. In the tax deed and the notice therefor, the lands were described as follows:

"Lot 1 to 5, Blk. 1, Pompano Beach . . . Lot 1, Blk. 2, Pompano Beach . . . Lot 1, Blk. 5, Pompano Beach . . . Lot 2 Blk. 6, Pompano Beach . . . Lot 4, Blk. 7, Pompano Beach . . . Lot 1 to 10, Block 8, Pompano Beach . . . Lot 6, 7, 8, Block 10, Pompano Beach . . . Lot 3, Blk. 11, Pompano Beach . . . Lot 2, Blk 12, Pompano Beach . . . Lot 1, 2, Blk. 13, Pompano Beach . . . Lots 5, 6, Blk. 13, Pompano Beach. . . ."

Appellant contends that this description was ample and relies on Day v. Benesh, 104 Fla. 58, 139 So. 448, and Mitchell v. Moore, decided March 4, 1943, not yet reported and like cases to support his contention. Appellee contends on the other hand that the description is not sufficient and relies on Newsom v. Belle Mead Dev. Corp., 131 Fla. 143, 179 So. 160; Schouten v. Hunt, 146 Fla. 360, 200 So. 923, and like cases to support her contention.

This Court early laid down the rule to be sufficient the description of land in a deed must be such that a surveyor could locate it without difficulty. As to tax deeds, we have consistently held that the description of the land must be certain in itself or capable of being made certain by matters relating to the description that are referred to in the tax deed. Evidence aliunde, not referred to in the deed, cannot be employed to point out the land intended to be conveyed.

It is contended that this rule has been relaxed in the cases relied on by appellant but we do not so construe them. In Mitchell v. Moore, supra, the description was as follows: "Tract 38, less road, Block 85, Palm Beach Farms." We held it good because "Palm Beach Farms" as referred to in the deed was generally known as such and there was no other plat in the county with which it could be confused. In Day

v. Benesh, supra, the description was "Lot 10, Block 207, Lake Worth." The town of Lake Worth was the only one of the name in Palm Beach County and we upheld the description in this and in Mitchell v. Moore because it was sufficiently definite that it could be made certain by matters referred to in the deed. In Mitchell v. Moore, supra, we did abrogate the rule long prevalent in Florida requiring greater strictness as to description in a tax deed than as to one inter parties but we went no further.

The description of the lands involved in the tax deed under attack is limited to certain numbered lots and blocks in Pompano Beach. The record shows that Pompano Beach is a considerable stretch of unincorporated ocean front in Broward County without defined limit, that there is a community near by known as Pompano Beach which is unincorporated and that there are seven well known plats of subdivisions known as Pompano Beach or some derivative of it recorded in Broward County. The evidence shows that the description quoted might apply as well to the community of Pompano Beach as the plat of ocean front by the same name and that it would be very difficult to tell which subdivision embraced the lots in this case. For this reason, we think the description here fell short of the mark of accuracy required by the law.

On the point of failure on the part of the clerk of the circuit court to mail the owner a copy of the notice of application for the tax deed, it appears that at the time the tax certificates were issued on which the tax deed was based, the statute controlling such notice was Chapter 12409, Acts of 1927 (Section 1001, Compiled General Laws of 1927) and Chapter 14572, Acts of 1929, while at the time the application for the tax deed was made, the controlling statute was Chapter 17457, Acts of 1935. The latter statute requires that copy of such notice be mailed to the last known owner but the former statute in effect at the time the certificates were issued makes no such requirement.

Appellant contends that the statute in effect at the time the tax certificates were issued governs the application for the tax deed while appellee contends that the statute in effect

at the time the application was made for the tax deed governs its issuance. Appellant relies on Barnett v. Ozark Corporation, 131 Fla. 831, 180 So. 376; Coult v. McIntosh Investment Company, 133 Fla. 141, 182 So. 594, and like cases to support his contention. Appellee relies on Clark-Ray-Johnson Company v. Williford, 62 Fla. 453, 56 So. 938, and like cases to support her contention.

The decisions are somewhat confusing but we think the very terms and import of the statute conclude the point. Chapter 17457, Acts of 1935, is a complete revision of the law for securing tax deeds and sets out all the essential requirements for doing so. It in terms repeals Section 1001, Compiled General Laws of 1927, relied on by appellant and is the controlling law on the subject. It became effective October 1, 1935, and required the clerk to mail a copy of the notice of application for tax deed to the last known owner. The record shows complete failure to comply with the statute on this point. We think the requirement was jurisdictional and that failure in this rendered the tax deed void. In this holding, we do not overlook the difference between the notice by mail and the jurisdictional notice by publication referred to by appellant. We think both were required by the statute (Chapter 17457, Acts of 1935).

We next consider the question of whether or not the plaintiff or cross appellant is entitled to recover mesne profits for the use of the lands while they were held by appellant and may such profits be augmented because of the permanent improvements placed on them.

At common law, the successful plaintiff in ejectment recovered the property with nominal damages for rents and profits; it mattered not whether he (defendant) was a bona fide or a mala fide holder. The action for mesne profits was one in trespass and could be brought for that purpose after the judgment in ejectment. Section 5040, et seq., Compiled General Laws of 1927, authorizes a combination of the action of ejectment with that of trespass for mesne profits but prescribes no procedure as to the latter. Since the two remedies are combined in one declaration they should be submitted and concluded in the same case.

The general rule is that the successful plaintiff in eject-ment may recover all mesne profits accruing during the ad-verse occupancy by the defendant. In some jurisdictions, they may be recovered up to the date of the trial. The measure of mesne profits sometimes called damages, is the value of the use and occupation of the land during the period defend-ant is shown to have been wrongfully in possession. The value of the use is measured by the value of the rents and profits.

In the case at bar, the land in question was wild and unimproved ocean front that had little or no rental value for agricultural purposes but it had a good potential value for residence and business purposes when improved in the man-ner heretofore stated. It is by virtue of rentals that accrued from the improved lots that the mesne profits are sought so the question of whether or not the permanent improvements should augment the mesne profits is the main issue on this point.

Appellee contends that the answer to this question turns on that of whether or not defendant was a holder in good faith and she says the record shows that he was not such a holder. Jones v. Gilliam, 134 Fla. 575, 184 So. 140; Boose v. Henderson, 148 Fla. 101, 3 So. (2nd) 757, and Lee v. Bowman, 55 Mo. 400, are relied on to support this contention.

The general rule is that mesne profits are measured by the rental value of the property or its value for use and occupa-tion during the time defendant was shown to have been wrongfully in possession. This value also includes any damages suffered to the lands in the meantime by reason of the occupancy. The cases cited support this rule; at the same time they and many others reveal that the rule is not always consistent because of the element of good faith when appli-cable and other factual elements.

If good faith has any place in this case, defendant is not in position to invoke it as a defense to mesne profits. He secured his tax deed in regular course but the plaintiff put him on notice of her claim before he took possession of the lands; not only that, he had an abstract of the title which

apprised him of her claim. He investigated the basis of her claim and secured the advise of counsel to the effect that it was groundless. This was supported by the fact that no taxes had been paid by the owner for many years, at the same time he was on notice of her right of redemption.

Many decisions announce the rule that mesne profits are always recoverable if the defendant was on notice of the adverse claim of the plaintiff. The same decisions also hold that good faith means a reasonable or honest belief of the occupant in his title, the fact that diligence might have shown the contrary does not in all cases negative good faith. Even though aware of an adverse claim, if the occupant has reasonable and strong ground to believe that it is totally destitute of legal foundation and this belief is based on the opinion of reputable counsel or if asserted on grounds that would warrant a reasonable man to think it void, his claim would not be wanting in good faith.

We think that under the facts in this case, the plaintiff is entitled to mesne profits and that such profits may be augmented by reason of the permanent improvements. The defendant was on record notice of the plaintiff's claim before he took charge of the lands. He was repeatedly warned of her claim before and after he commenced to improve it; she was a reputable member of the bar and while he had the advice of counsel, he knew there was a sharp conflict among counsel as to who had good title. It would be a lengthy story and serve no useful purpose to discuss the basis of appellee's title. Suffice it to say that we have never examined a case of this kind in which more red lights were lurking. Defendant saw them and ran over every one of them. He took a chance and lost; the law says he must attorn to appellee; since his title is shown to be void, it would be unjust for him to speculate on her lands without doing so.

The statute gives no yard stick by which to measure mesne profits in a case like this so we apply the general rule heretofore stated. That is to say, the value of the use and occupation during the period of wrongful posession which may be determined by the value of the net rents and profits. Net rents and profits has reference to a fair rental value less

the cost of rental and collection but does not contemplate interest on the investment.

Since we find the tax deed to be void and mesne profits collectible it becomes necessary to adjudicate the question of whether or not defendant is entitled to be imbursed for the cost of permanent improvements made on the land during his occupancy.

Under the rule of the common law, he who placed improvements on land did so at his peril even though he acted in good faith. The rationale of the rule was that it induced diligence in the examination of titles and discouraged trespassing on the property of another. Under the civil law, the rule was to the contrary so one who made improvements on the land of another in good faith could exact full compensation for them less the value of the use of the land.

Equity adopted the rule of the civil law. When the legal owner comes into court seeking an accounting for mesne profits after a judgment in ejectment, relief may be granted on condition of compensation to the bona fide holder for improvements made by him. This on the principal that he who seeks equity must do equity. From the rule thus adopted, the action of trespass to recover mesne profits was developed. Many states have incorporated the principal of the rule into betterment acts providing compensation for permanent improvements. 27 American Jurisprudence 264.

We have such an act in this State originally passed as Chapter 4322, Acts of 1895, later amended by Chapter 12409, Acts of 1927, now Section 1026, Compiled General Laws of 1927, or Section 196.07, Florida Statutes of 1941. It provides in substance that when any tax deed is declared invalid, the party in whose favor the judgment is entered shall pay to the party against whom it is entered the amount paid for the tax deed and all taxes paid on the land with interest, all expenses of securing the tax deed and the fair cash value of all permanent improvements made on the land by the holder during the life of the tax deed.

Statutes like this do not depend on the element of good faith unless in terms they so provide. They are remedial and should be construed to give one who has acquired a tax deed

and in reliance thereon made improvements on the land to recover the fair cash value of such improvements if the tax deed should for any reason be declared void. Some of the betterment statutes make recovery depend on mistake or good faith on the part of the tax deed holder but ours does not. In Lovett v. Shore, 111 Fla. 592, text 597, 149 So. 603, we held that only such permanent improvements as added to the value of the lands could be paid for and that the procedure outlined in the statute Section 70.06 et seq., Florida Statutes of 1941, should be followed in ascertaining them so it may be that the cost of the improvements will be no indication whatever of the amount that the law requires to be compensated for. There is nothing in San Sebastian Development Corp. v Couth, 103 Fla. 692, 138 So. 61; Jones v. Gillian, supra, or Boose v. Henderson, supra, in conflict with this view.

Sections 70.06 to 70.12 inclusive provide in detail how compensation for permanent improvements may be ascertained as a sequel to an action in ejectment. The defendant is required to petition the Court within three months of the judgment in ejectment to allow him the amount of the improvements made by him. In this petition, he is required to set up the source of his title, the fact of his possession and that he believed his title to be good and valid. In our view, if such a belief is well grounded, it satisfied every element of good faith.

Section 70.06, et seq., prescribes the method of computing the cost of permanent improvements in all suits in ejectment while Section 196.07, Florida Statutes of 1941 enumerates the items that a defendant may recover when the judgment in ejectment is against him. The latter statute is applicable only when a tax deed is held void. It contemplates payment for the tax deed and all taxes paid with interest in addition to permanent improvements. We think the cost of the permanent improvements may be computed as provided in the former statute and that sum augmented by the cost of the tax deed and taxes paid with the allowable interest.

We think the answer to the foregoing questions either directly or by implication answers every other question

raised. Appellant attempts to by-pass these questions by posing the counter interrogatory that even though all the foregoing be true, appellant has (1) an equitable title that will defeat the suit in ejectment, and (2) the legal title had vested in the state by virtue of the tax certificates and being so appellee had only an equitable title that would not support her suit in ejectment.

There is no merit to either of these contentions. What we said in answer to the main question is sufficient answer to the first. Since neither the tax deed nor the certificates described the lands and the required notice was not given, it constituted no basis for an equitable title and there was no theory on which it could have been enforced. In answer to the second phase of the interrogatory, it is sufficient to say that the owner's right of redemption does not expire until the tax deed is issued. Hightower v. Hogan, 69 Fla. 86, 68 So. 669.

Other questions argued raise estoppel against appellee assert that her title is champertous and that the sheriff's deed to one Joseph R. Dunn on which her claim of title depends was void because there is no showing that the sheriff of Broward County had in his possession the execution issued by the Circuit Court of Duval County at the time of the levy and sale.

The record shows that the execution docket of Duval County was introduced in evidence and it showed the issuance of the execution and its delivery to plaintiff and his counsel. It was shown to have been in the hands of another reputable lawyer before the levy and the sheriff's deed contains an appropriate recital of its presence. It was also shown to have been lost at the time of the trial. We hold this to be sufficient to show a valid levy and a valid execution to support it. Johnson v. McKinnon, 54 Fla. 221, 45 So. 23. See also 36 A.L.R. 1010 et seq. for full discussion of the subject.

Other questions argued have been carefully examined but a discussion of them would serve no useful purpose. It follows that the judgment as to the main appeal is affirmed; as to the cross appeal, it is reversed with directions.

Affirmed in part. Reversed in part.

BUFORD, C. J., TERRELL, CHAPMAN, THOMAS and SEBRING, JJ., concur.

ADAMS, J., dissents.

BROWN, J., not participating.

### ON PETITION FOR REHEARING

PER CURIAM:

Appellant has filed a lengthy petition for rehearing in which many things are called to the attention of the Court but none of them was overlooked on first consideration. In fact, few cases come to this Court that receive as much painstaking care as this one. The issues raised and the size of the record required much more than the normal time required but it was given and every question thoroughly considered.

On consideration of the petition for rehearing, we are impressed with the fact that counsel have misconstrued the effect of our opinion. In fine, the opinion recognizes title in appellee to the land in question but it also recognizes the right of appellant to collect the value of the improvements placed on it in the manner provided by statute. In fact, because of conditions stated in the opinion, both parties have substantial rights involved and we will recognize no judgment that has the effect of destroying the right of either party.

As to mesne profits, it is true that the opinion states that they "may be augmented by reason of the permanent improvements" but there was no suggestion that the criterion to determine this would be the sum that appellant spent improving the lands. The primary basis of mesne profits is rental value. Whether or not improvements is an element to be considered depends on the facts of the case. There is no showing whatever in this record that the value of the improvements made by appellant "may" be used as a basis for computing mesne profits. Unless some showing in equity can be made, they cannot be considered.

Petition for rehearing is denied.

BUFORD, C. J., TERRELL, THOMAS and SEBRING, JJ., concur.

CHAPMAN and ADAMS, JJ., dissent.

BROWN, J., not participating.