405 So.2d 1053 (1981)
Naomi WILKERSON and Carroll C. Hughes, Appellants,
v.
Ronald J. GIBBS, Personal Representative of the Estate of E.J. Gibbs, Sr. and Gibbs Sanitation Service, Inc., a Florida Corporation, Appellees.
No. VV-463.
District Court of Appeal of Florida, First District.
November 17, 1981.
Ronald W. Ritchie of Reeves, King & Ritchie, Pensacola, for appellants.
Phillip A. Bates of Emmanuel, Sheppard & Condon, and Fletcher Fleming of Shell, Fleming, Davis & Menge, Pensacola, for appellees.
ERVIN, Judge.
Wilkerson and Hughes bring this appeal from an order of the trial court barring their present cause of action in trespass for mesne profits, filed after a judgment entered in a former action for ejectment in *1054 which they had prevailed. We agree with the lower court that the former common law action for mesne profits has now merged with the statutory action of ejectment, thus precluding a separate cause directed to mesne profits.
In 1973, the now deceased husband of appellant Wilkerson, together with appellant Hughes, filed an action to quiet title and to eject appellees from the same real property that was involved in appellants' later action for mesne profits. In their former complaint for ejectment, the appellants did not seek as damages mesne profits, consequently they were awarded only possession of the real property. After appellants had filed their later action seeking mesne profits, the court granted appellees' motion to dismiss, holding that the former common law action for mesne profits had now merged with the statutory action for ejectment, and that because of appellants' failure to seek such damages in the former suit, they were thereafter barred from later requesting them.
The resolution to the question of whether a plaintiff is now barred from pursuing an action only for mesne profits after one has recovered in ejectment rests upon an examination of the common law history of both actions, as well as the legislative history of Chapter 66, pertaining to ejectment.
At early common law, two kinds of estates in land existed: freehold and non-freehold. A freehold estate was a life estate, or any other estate greater than a life estate; a non-freehold estate was any estate less than a life's duration.[1] If the holder of a freehold estate was ousted from possession, he was originally afforded a number of remedies in the form of certain real actions entitling him to recover possession of the fee and establish his right of title.[2] The tenant was considered to have only a chattel or personal interest in the land. As a result, the holder of such limited interest, if ousted, was permitted to recover only damages for the wrongful ouster  he was not permitted to recover possession of the term.[3] So that the tenant might be provided also with the right to recover possession, the action known as trespass for ejectment (trespass quare ejectione firmae) was developed. In that form of action, in addition to recovery of the land, one was allowed nominal damages; however, any profits accruing during the defendant's adverse occupancy were denied him because, although every ejectment involved a trespass, the continued withholding of the land was not a trespass; consequently, one could not in that action obtain mesne profits.[4] No fictions were involved in this proceeding, and the tenant brought his action directly against the alleged disseisor.
Because this new action became such an effective tool for trying the right to possession, the owners of the fee began to seek means whereby ejectment might also be extended to them, without violating the common law rule that its remedies were available only to non-freeholders.[5] This *1055 rule of preclusion was eventually circumvented by a declaration in ejectment which asserted the following fictions: (1) that a lease was executed by the lessor to the tenant (the nominal plaintiff), and (2) that the plaintiff was ousted from possession by another person (the nominal defendant).[6] The latter, known as the "casual ejector", did not defend the action, but notified the person holding adversely that it was not his intention to defend, and that if the adverse possessor wished to defend, it was his responsibility to appear before the court and do so.[7] Through this procedure the competing interests of the actual parties were finally brought to controversy before a court of law.
Since the same remedies of ejectment as were formerly available only to tenants were now extended to freeholders, the latter were allowed to recover in ejectment only nominal damages resulting from the wrongful ouster.[8] In order to compensate the owners for profits or rents accruing from the time of the disseisor's wrongful occupation of the premises, the separate action of trespass for mesne profits was developed. In that action, it was necessary for the owner, who at his option could sue either in his own name as the holder of the freehold,[9] or in the name of the nominal plaintiff, to regain possession of the premises by a lawful reentry, that is by a judgment entered for him in the action of ejectment. Having recovered possession, he was, by a legal fiction, presumed to have been in possession throughout the intervening period of dispossession,[10] thus enabling him to allege that the wrongful occupation was a continuing trespass, thereby entitling him, now restored to possession, to all the profits obtained during the period of the adverse possession.[11]
The common law procedure by which one sues in ejectment has undergone major statutory changes in Florida. In 1859, the legislature passed an act providing generally, as is presently provided by Section 66.011, Florida Statutes (1979), that it is no longer necessary to have any fictitious parties to an action in ejectment, but that the suit may be brought directly against the party in possession, or by the one claiming adversely. Unlike the present statute, the Act of 1859 provided that "the declaration shall contain a plain statement of the cause of action to entitle the plaintiff to recover the land in controversy, together with mesne profits."[12] (e.s.) The Florida Supreme Court has consistently recognized that the legislative purpose in enacting the statute was to do away with the necessity *1056 of bringing two separate actions, "and to provide for a final settlement, both as to the land, and damages for the detention thereof, in one action."[13] The court has further observed that the statutory words "together with mesne profits" meant damages which were "merely incidental to the suit."[14] Finally, although the court has not been directly faced with the question of whether the failure to request mesne profits in an action for ejectment precludes a later demand for such damages, it, nevertheless, has clearly stated that the pleader should combine his demand for mesne profits with his request for possession in his action for ejectment, thereby concluding both recovery of the real property and damages in the same case.[15]
The above opinions strongly suggest that there now exists only one single tort; that mesne profits are simply incidental to the alleged wrongful possession, and that such damages must be claimed in one action, or not at all. This is the effect given statutes similar to ours by certain courts in other jurisdictions.[16] Other courts, however, hold that in the absence of statutory provision to the contrary, the right to join causes of action for possession and for mesne profits is merely a privilege, and the plaintiff in ejectment may, at his election, confine the relief sought in such action to the recovery of possession, and later resort to a separate action for damages.[17]
It would appear that the answer to the question whether the separate common law action for mesne profits yet remains in Florida rests primarily upon the language of the statute in ejectment. We consider that Florida's statute, which required the pleader to allege a simple statement seeking recovery of the real property and then to request mesne profits, which were simply damages incidental to the primary relief sought, was a tacit expression that there was only one unitary cause of action. Therefore, upon the entry of a judgment in ejectment, by operation of the doctrine of merger, the judgment entered in the earlier cause barred a later action for damages.[18] The fact that a plaintiff bringing ejectment makes no demand for mesne profits is immaterial as to whether he retains the right thereafter to seek them. Florida has long recognized that if the defendant's wrongful act is single, the law requires that all damages sustained or accruing to one as a result of that one act must be claimed and recovered in one action or not at all.[19]
We would be remiss if we did not observe that in 1967 the legislature deleted Section 70.03(1), Florida Statutes (1965),[20] which had provided, similar to certain provisions in the act of 1859, that the complaint shall state a plain statement of the cause of action to recover the land, together with mesne profits. Nevertheless, this deletion did not instanter revive the old common law action of trespass for mesne profits. Section 49 to Chapter 67-254 explains that it was the legislative intent to delete certain statutory provisions which were either obsolete, redundant or duplicative, or in conflict with the Florida Rules of Civil Procedure.
In 1968, the Florida Supreme Court approved Form 1.940, for use with the Rules of Civil Procedure, to become effective *1057 October 1, 1968.[21] It prescribes what should be alleged in a complaint in ejectment, and generally follows the statutory language stating that the action is one "to recover [possession of] real property", and concludes with a demand for "judgment for possession of the property and damages against defendant." Although the approved form does not explicitly use the words mesne profits, mesne profits are commonly understood to mean damages.[22] Additionally, the legislature left intact the provisions of former Section 70.01 of the 1965 Florida Statutes (renumbered in 1967 as Section 66.011), abolishing common law ejectment, which, as previously observed, requires the real plaintiff in interest to bring his action directly against the real defendant in interest. Because the fictions remain abolished, the statutory action in ejectment is not dependent, as was its common law counterpart as extended to freeholders, upon the limited remedies available in common law ejectment to tenants, whose interest in the realty was considered only personal. Therefore, once the common law requirement of naming nominal plaintiffs and nominal defendants in ejectment was repealed, the rule limiting the prevailing plaintiff to only nominal damages in the action as it now exists must also be considered no longer extant.
The above legislative and judicial changes leave little room for doubt that the common law action of trespass for mesne profits has had no separate existence in Florida since 1859. Accordingly, the lower court's order of dismissal must be
AFFIRMED.
THOMPSON, J., and OWEN, WILLIAM C., Jr. (Retired), Associate Judge, concur.
NOTES
[1] Koffler and Reppy, Common Law Pleading, 226 (1969).
[2] These remedies, referred to as the ancient real actions, were 60 in number. They were highly dilatory, expensive and unduly technical. Or, as Sedgwick and wait observed:

The highest technical skill and learning were requisite to comprehend and define the nature and purposes of these various Writs, the distinctions between which were refined, abstruse and often scarcely perceptible. In Personal Actions, however, there were never many Writs at Common Law. This very scarcity made personal actions attractive in early times, the pleader being seldom at a loss to know which Writ to choose; while in Real Actions the most experienced practitioner, exercising the utmost care, frequently sued out a Real Writ of the wrong degree, class or nature, thereby rendering the proceeding of no avail, and frequently imperilling the demandant's right to a proper writ or remedy.
Sedgwick & Wait, Principles and Practices Governing the Trial of Title to Land, 3 (N.Y. 1882).
[3] Keigwin, Cases in Common Law Pleading, 123 (2d ed. Rochester, 1934).
[4] Salmond's Law of Torts, 177 (10th ed., London, 1945).
[5] As Koffler and Reppy observed:

The common law believed in an economy of remedies. Where the law supplied a remedy to a given group of litigants, like the owners of freehold estates, they were generally limited to that remedy. When therefore the new action of trespass for ejectment was created, there naturally followed a period of time during which the new remedy remained unavailable to the owners of freehold estates.
Koffler and Reppy, supra, n. 1, at 227.
[6] The creation of the final stage of the fictitious proceeding in ejectment was attributed by Blackstone to Lord Chief Justice Roll during the middle of the 17th century. 3 Blackstone, Commentaries on the Laws of England, 203 (Hammond ed., San Francisco, 1890).
[7] Shipman, Handbook on Common-Law Pleading, 175 (3d ed. by Ballantine, St. Paul, 1923).
[8] Chitty advances an additional reason why only nominal damages were attainable in the fictitious proceeding of ejectment:

The action in ejectment, ... being altogether a mere fiction, it being brought by a nominal plaintiff against a nominal defendant for a supposed ouster, merely nominal damages are given; and satisfaction for the injury the real plaintiff has sustained by being kept out of the mesne profits, & c. is not, in general included in the verdict in the ejectment.
1 Chitty, Treatise on Pleading and Parties to Actions With Precedents and Forms, 192, 193 (14th Am. ed. by Perkins, Springfield 1866).
[9] Chitty explains that the action in trespass for mesne profits was not affected by the fictions which were required in ejectment, so that it was to the advantage of the lessor to bring the action in his own name as plaintiff, as he could recover damages for the rents and profits received by the defendant prior to the demise alleged in the declaration in ejectment, to which he would have been denied if brought in the name of the nominal plaintiff. Id. at 194.
[10] Blackstone, supra, n. 6, at 210.
[11] Koffler and Reppy, supra, at 240.
[12] Section 1, Ch. 999, Act of December 20, 1859 (McClellan's Digest at 480).
[13] Ashmead v. Wilson, 22 Fla. 255, 261 (1886). See also Norman v. Beekman, 58 Fla. 325, 50 So. 876 (1909); Wismer v. Alyea, 103 Fla. 1102, 138 So. 763 (1932); Kester v. Bostwick, 153 Fla. 437, 15 So.2d 201 (1943).
[14] Wismer v. Alyea, supra, n. 13, 138 So. at 765.
[15] Kester v. Bostwick, supra, n. 13, 15 So.2d at 205.
[16] See Raymond v. Andrews, 60 Mass. 265 (6 Cush.) (1850), and Sabourin v. Woish, 117 Vt. 94, 85 A.2d 493 (1952).
[17] See Coburn v. Goodall, 72 Cal. 498, 14 P. 190 (1887); Texas Co. v. Wax, 226 Mo. App. 850, 36 S.W.2d 122 (1931).
[18] See Sessions v. Stevens, 1 Fla. 233 (1847); Campbell v. Kauffman Mill. Co., 42 Fla. 328, 29 So. 435 (1900).
[19] Gaynon v. Statum, 151 Fla. 793, 10 So.2d 432 (1942); Mims v. Reid, 98 So.2d 498 (Fla. 1957); Goldman v. Kent Cleaners and Laundry, Inc., 110 So.2d 50 (Fla. 3d DCA 1959).
[20] See § 49, Ch. 67-254 (Laws of Fla. 1967).
[21] See In re: Florida Rules of Civil Procedure, 211 So.2d 174, 187 (Fla. 1968).
[22] See Kester v. Bostwick, supra, n. 13, 15 So.2d at 205.