## RICHARDSON v. SCOTT RIVER W. AND M. CO.

WHERE the meaning of a written instrument is doubtful, extrinsic evidence may be resorted to for the removal of the doubt, but such evidence is not admissible to show that the effect of the instrument is different from that which its terms plainly and unequivocally denote.

Where a bond, made in connection with a mortgage to secure the debt of a corporation was signed by four persons, who neither described themselves as agents of the corporation, nor designated anywhere therein the corporation as the party intended to be bound : *held*, that the instrument was upon its face the personal obligation of the parties signing, and that extrinsic evidence of their official character or of their intentions was inadmissible for the purpose of showing it to be the bond of the corporation.

A conveyance of real property by a corporation must be under its corporate seal. It may alter its seal at pleasure, and may adopt as its own the private seal of an individual, but in the latter case the seal adopted must be used as that of the corporation.

If to a deed, purporting to be that of a corporation, a seal be affixed as that of the individual agent who signs it, such seal cannot be treated as that of the corporation. A declaration in the instrument that the seal is affixed as that of the agent is conclusive of its character and effect.

Richardson v. Scott River W. and M. Co.

It is not necessary to state in a conveyance by a corporation that the seal used is that of the corporation. This fact may, in the absence of any declaration to the contrary, be presumed from the language of the conveyance or proved by evidence *aliunde*.

A mortgage, made in connection with a bond to secure the debt of a corporation, styled the Scott River Water and Mining Company, named as parties of the first part (grantors), W. P. Pool, C. W. Tozer, G. T. Terry, and J. Reid, "President, Directors, and members of the Scott River Water and Mining Company," and concluded as follows: "In witness whereof, the said parties of the first part hereunto set their hands and affix their seals," followed by the signatures of the four persons above named with a seal or scrawl affixed to each: *held*, that this conveyance was not sealed with the corporate seal, and was therefore inoperative as the foundation of any right or claim to the corporate property which it purported to convey.

APPEAL from the Ninth Judicial District.

The mortgage referred to in the opinion was in the points material to the decision in the following form:

"This indenture, made and executed this twenty-first day of December, 1855, between Wm. P. Pool, Charles W. Tozer, George F. Terry, and John Reid, of Scott's Bar Township, Siskiyou County, State of California, President, Directors, and members of the Scott River Water and Mining Company, parties of the first part, and Elijah Steele  *  *  of the second part, witnesseth, that the said parties of the first part, in consideration of  *  *  have and by these presents do grant, bargain, sell," etc., " and the said parties of the first part for themselves, their heirs, executors, and administrators, covenant to and with the said party of the second part," his heirs, etc., " that they are legally incorporated under the laws of the State of California by the name, style, and description of the Scott River Water and Mining Company, for the purpose of" constructing the Scott River Ditch, etc., " and that by such charter they have acquired the sole and exclusive right" to the water privilege, ditch, etc., " and that they have good right and full power and authority to convey" the property above described; *provided* always, " that if the said parties of the first part," their heirs, etc., shall well and truly pay, etc., " according to the condition of a bond bearing even date herewith," then this conveyance to be void; " and in case of default of payment it shall be lawful for the said party of the second part to proceed to foreclose accord-

ing to law, and make public sale of said ditch and flume and all and every of the rights of the said parties of the first part acquired (therein) by said charter, and the work and improvements done and to be done under and by virtue of said charter, to acquire and maintain the rights guaranteed thereby, and out of the proceeds to pay," etc.   " In witness whereof, the said parties of the first part have hereunto set their hands and affixed their seals, the day and year first above written.

|  |  |
|---|---|
| " W. P. Pool, | [L.S.] |
| " C. W. Tozer, | [L.S.] |
| " Geo. T. Terry, | [L.S.] |
| " Jno. Reid, | [L.S.] |

" In presence of ..
 ". Samuel A. Duval,
 ". Charles McLean."

The bond given with the mortgage nowhere mentions or refers to the corporation.

*Crockett & Crittenden,* for Appellant.

I.   The mortgage was executed by the President, Directors, and stockholders of the company to Steele, and was the mortgage of the company, and not simply the mortgage of the individual persons who signed it, because—

1. It is signed and executed by all the officers of the company who describe themselves as such.   It is evident they acted in their official capacity, and when this is apparent on the face of the paper it is a corporate act in whatever name it may be done.   In grants by corporations a misnomer of the corporation is immaterial and the grant is valid, provided it appears to have been made as a corporate act.   (Angel & Ames on Corp. Secs. 99, 185, 231.)

2. That this mortgage was intended to be a corporate act is apparent from the fact: 1st, that it is made by all the officers and members of the corporation who describe themselves as such; 2d, it purports to convey, not the interest of the parties to the instrument in the corporate property, but the whole of the corporate property itself; 3d, the grantors covenant that they have good right and full power and authority to convey the same; 4th, that

upon a breach of the conditions the mortgagee shall have a right to sell the property, all the rights of the said parties of the first part acquired by the charter, and to "acquire the rights guaranteed thereby;" 5th, it is evident from the proofs that the whole original object and intent of the mortgage, was to raise money for the use of the corporation, and the shareholders united in it only for the purpose of placing it beyond doubt that the holder of the mortgage would have the best possible security upon the corporate property and franchises; 6th, the money advanced by Steele upon the mortgage was advanced to and used by the corporation.

These facts render it apparent that it was intended as a corporate act, and enough appears on the face of the paper to make that intention plain. But if not apparent on the face of the paper the parol proof places it beyond doubt, and such proof is competent for that purpose.

II.   It does not appear that the corporation had a corporate seal. It might adopt any seal for the occasion. The case of *Mill Dam Foundry Co.* v. *Hovey* (21 Pick. 417) is directly in point. In that case the instrument was signed by the Treasurer of the corporation and the other party to the contract, and concluded as follows: " In witness whereof, we have hereunto set our hands;" then followed the signatures, at the end of each of which was a wafer and a small bit of paper stamped with a common desk stamp of a merchant. It was objected that this was not the seal of the company; but the Court decided otherwise, and says a corporation may adopt any seal and need not say it is their common seal. This law is as old as the books. Twenty may seal at the same time with one seal. (See also *Reynolds' Heirs* v. *Trustees*, 6 Dana, 37.)

III.   No vote of the corporation was necessary to authorize the mortgage to be made, because the authority to execute it is manifest from the fact that all the corporators united in it; and though it was executed without authority by the President or any officer of the corporation, it became valid as a corporate act if the corporation afterwards assented to it, and such assent may be proven by circumstances. (*Burrill* v. *President of Nahant Bank*, 2 Met. 163; *Decker* v. *Freeman*, 3 Greenl. 338.) That such ratification will bind the company, and may be inferred from subse-

quent acts of the corporation, is established by the cases of *Shaver* v. *Bear River and Auburn Co.* (10 Cal. 396) ; *Moss* v. *Rassie Lead Co.* (5 Hill, 137) ; *Hoyt* v. *Thompson* (19 N. Y. 207) ; *Partridge* v. *Badger* (25 Barb. 146).

IV.    If the mortgage was not literally and in terms the mortgage of the corporation, yet if it was so intended and so treated by the corporation and the mortgagee, and if on the faith that it was obligatory on the corporation, the mortgagee, Steel, advanced his money, and the corporation accepted and used the money for corporate purposes, the company is estopped in a Court of Equity to deny its validity as a corporate mortgage.    ( *Central Bank* v. *Empire Co.*, 26 Barb. 23.)

In a Court of Equity an absolute deed will be treated as a mortgage, when it was so intended ; and it would be a fraud upon the mortgagee for the company to deal with him and obtain his money, on the faith that it was a valid corporate mortgage, and afterwards repudiate it.    " Mortgages may be implied in equity from the nature of the transactions between the parties, and then they are termed equitable mortgages."    (Story's Eq. Secs. 1020, 1018.)

Whatever may be the form of the instrument, it will be held in equity to be a mortgage, if so intended by the parties.    (Story's Eq. Sec. 1018.)

And equity will establish a lien on real estate whenever that is the agreement, at least as against the party himself and third persons who are volunteers, or have notice.    (Story's Eq. Secs. 1231, 1232.)

*H. O. & W. H. Beatty*, for Respondent.

The terms of the mortgage preclude the idea of its being a corporate act.    Instruments having much more the semblance of corporate acts, have been passed on by the Courts, and have been pronounced not to be corporate deeds.

. The Courts have uniformly held that, however full the authority of the agent, however ample his authority may have been to affix the corporation seal, or a corporation seal, still, if he affixes a seal which he calls his seal, the deed is not the deed of the corporation, and if any suit is brought upon the contract contained in the deed, the suit must be in assumpsit and not in covenant.

Richardson *v.* Scott River W. and M. Co.

Parsons on Contracts (Vol. 1, p. 94, note *f*), uses the following language : "An instrument to which the agent of a corporation has affixed his seal may be evidence of the contract in an action of assumpsit against the corporation, for the seal of the agent of the corporation, unlike that of the agent of a natural person, can never be the seal of his principal." (See, also, *Randall* v. *Van Vecken*, 19 Johns. 60 ; *Damon* v. *Inhabitants of Granbey*, 2 Pick. 345 ; *Bank of Columbia* v *Patterson's Administrator*, 7 Cranch, 299.)

The case of *Brimley* v. *Mann* (2 Cush. 337), where a deed was executed by the agent of the corporation, is a very strong one, and fully in point.

Not only could the corporation deny the validity of this mortgage, or its binding effect upon them, but any creditor of the corporation, interested in its assets, could deny that it was a corporate mortgage and resist its legal enforcement. (1 Pars. on Con. 118.)

COPE, C. J. delivered the opinion of the Court, NORTON, J. and CROCKER, J. concurring.

This is an action to recover a sum of money secured by a bond and mortgage, claimed to have been executed by a corporation known as the Scott River Water and Mining Company. The plaintiff alleges that the corporation, by its President and Directors, executed the bond and mortgage in question, and asks a foreclosure of the mortgage, and a sale of the mortgaged property, etc. The defendants deny that the bond and mortgage were executed by the corporation, and resist the claim of the plaintiff to the relief asked.

There is no doubt that the debt for which the bond and mortgage were given was the debt of the corporation, but we are of opinion that the bond and mortgage cannot be enforced as corporate obligations. The bond purports to be the individual obligation of the persons signing it, and the corporation is nowhere named as a party to it, either directly or by the use of language tending to show that it was a corporate transaction. It is signed by four persons, who neither describe themselves as agents of the corporation, nor designate the corporation as the party intended to be bound by it, and we think that extrinsic evidence is not admissible

to change the character of the instrument. If its construction were doubtful, such evidence might be resorted to for the removal of the doubt, but it is not admissible to show that the effect of the instrument is different from that which its terms plainly and unequivocally denote.

The mortgage is signed by the same persons who signed the bond, and although differing from the latter in the fact that the corporation is mentioned in the body of it, its execution cannot be regarded as a corporate act. It names as parties of the first part William P. Pool, Charles W. Tozer, George T. Terry, and John Reid, "President, Directors, and members of the Scott River Mining Company," and concludes as follows: "In witness whereof the said parties of the first part hereunto set their hands and affix their seals." Then come the signatures of the parties, to each of which is appended a scroll or seal; but the seals thus appended are the private seals of the parties signing, and not the common seal of the corporation. The clause referred to is conclusive of this point, and as the corporation could only convey under its corporate seal, the mortgage is necessarily inoperative as the foundation of any right or claim to the corporate property. A corporation may alter its seal at pleasure, and may adopt as its own the private seal of an individual if it choose to do so, but when adopted it must be used as the seal of the corporation. If it be affixed as the seal of the individual, it cannot be treated as that of the corporation, and a declaration in the instrument that it is so affixed is conclusive of its character and effect. "If a conveyance," says Parsons, "purporting to be the conveyance of a corporation, made by one authorized to make it, be in fact executed by the attorney as his own deed, it is not the deed of the corporation, although it was intended to be so, and the attorney had full authority to make it so. And if the deed be written throughout as the deed of the corporation, and the attorney when executing it declares that he executes it on behalf of the corporation, but says, ' in witness whereof I set *my hand and seal,*' this is his deed only, and does not pass the land of the corporation." (1 Par. on Con. 118.) The same rule is laid down by Angell & Ames in their work on corporations, and there are numerous cases in which the point has

been judicially determined. The case of *Brimley* v. *Mann* (2 Cush. 337) covers the entire ground, holding that a deed executed by the agent of a corporation, and purporting to be the deed of the corporation, was not so in fact, as it was signed by the agent in his own name, *and sealed with his seal.* The seal of the agent is not a seal as regards the corporation, and where the seal is attached to a conveyance as that of the agent, the conveyance is the conveyance of the agent and not of the corporation. It is unnecessary to state in the conveyance that the seal used is that of the corporation, if the fact otherwise appear, either presumptively from the language of the conveyance, or by evidence *aliunde.* The fact must appear, however, in some manner, and where the conveyance itself declares the seal to be that of the agent, there is no room for any presumption or inquiry upon the subject.

Judgment affirmed.