J. J. JOHNS, *et ux.,* v. SAM GILLIAN, CHARLES L. BROWN, *et ux.,* JUDITH BROWN, a minor, heirs at law of PEARL M. BROWN, deceased, and all unknown heirs, devisees, grantees or other claimants of the said PEARL M. BROWN deceased.

184 So. 140.
Opinion Filed October 15, 1938.
Rehearing Denied November 14, 1938.

576

*G. H. Martin,* for Appellants;

*Robert J. Davis,* for Appellees.

PER CURIAM.—This appeal is from a final decree rendered in a suit involving the foreclosure of a mortgage on real estate. In 1923 Pearl M. Brown, a married woman, was the owner of the property, and purchased building material from Everglade Lumber Company, a corporation, for the purpose of repairing and improving the property. In payment either in full or in part for the material, the said Pearl M. Brown, and her husband, Charles L. Brown, made, executed and delivered to the Everglade Lumber Company their promissory note secured by a mortgage upon the property. The mortgage was not recorded until shortly before the institution of this suit.

In 1926 Pearl M. Brown reduced the indebtedness to $400.00 by payment to the corporation, for which it granted her an extension of 90 days on the payment of the balance, and delivered to her the original note with the understanding that the corporation would receive a new note as evidence of the unpaid balance. The new note was given and signed by Pearl M. Brown alone, which the corporation accepted. Pearl M. Brown died, leaving as her heirs her husband and a minor daughter. The husband subsequently remarried and moved away, leaving the property abandoned.

Sam Gillian, Plaintiff in the court below, had a considerable interest in Everglade Lumber Company, holding more

than a majority of the stock. In 1927-28, when the Everglade Lumber Company fell into financial difficulties, Gillian advanced money to the corporation for which it delivered to him a number of securities, among which was the mortgage herein sued on. No written assignment of the mortgage was made at that time.

Gillian was concerned for the protection of the property, and about 1932 he took possession of the mortgaged premises, allowing appellant J. J. Johns to move in. There is some conflict in the testimony relating to the arrangement entered into between Gillian and Johns. Gillian contends that Johns was to repair the house during his spare time and take care of it, that he (Gillian) was to furnish the materials for making it livable and that Johns could apply whatever charge he made for services on the rent. Johns contends that the property was to be the home of himself and his wife for the balance of their lives.

In January, 1937, Gillian began foreclosure proceedings in the name of the corporation, naming as defendants the heirs of Pearl M. Brown and Johns and his wife. When it was discovered that the debt and mortgage had been transferred to Gillian in 1927 or 1928 the directors of Everglade Lumber Company executed a written assignment, purporting to assign the mortgage to Gillian, and Gillian was substituted as plaintiff. Decrees *pro confesso* were entered against the heirs of Pearl M. Brown. Apellants J. J. Johns and Rachel Johns, his wife, appeared and upon their amended answer the issues were made up and the cause proceeded.

A final decree was rendered in favor of the plaintiff allowing him credits for payments made on taxes, materials and plumbing supplies. The lower court recognized Johns as a tenant of Gillian, and allowed the heirs of the mortgagor a credit for rent in the final decree, but refused to

allow appellant Johns any credit for the improvements made by him. From the final decree this appeal was taken.

Appellant Johns in his brief has stated his first question as follows:

"Where there is no proof that a corporation of Florida has or has not been dissolved, does an Assignment of Mortgage, executed by several persons designated to be directors, who signed in their respective individual capacity, operate to transfer ownership of a mortgage of which the corporation is mortgagee?"

Section 5672 C. G. L., 1927, sets out the method by which a corporation may convey lands:

"Any corporation may convey lands by deed sealed with the common or corporate seal and signed in its name by its president or any vice-president or chief executive officer."

The formal parts of the assignment are as follows:

"Know all men by these presents: That U. S. Caoyt, Sam Gillian, Mrs. Ivey Stranahan and William Wingate, Directors of Everglade Lumber Company, a corporation, of the first part, in consideration of the sum of Ten Dollars and other valuable consideration, Dollars, lawful money of the United States, to them in hand paid by Sam Gillian, * * *," etc.

The attestation clause reads thus:

"In witness whereof, we have hereunto set our hands and seals, the 17th day of February, in the year one thousand nine hundred and thirty-seven. U. S. Cayot, Pres. (Seal); Sam Gillian, Sec. Tr. (Seal); Ivy J. Stranahan (Seal); William Wingate (Seal)."

The certificate of acknowledgment states that: "* * * before me personally came U. S. Cayot, Sam Gillian, Mrs. Ivey Stranahan and William Wingate, to me known to be the individuals described in and who executed the within and foregoing assignment, and they acknowledged before

me that they executed the same for the purposes therein expressed."

Private seals of officers and directors are not seals of the corporation. Mitchell v. St. Andrews' Bay Land Co., 4 Fla. 200. It is essential to the proper execution of a deed or mortgage by a corporation that it be done in the name and in behalf of the corporation, and under its corporate seal. The seals affixed in the above assignment are the private seals of the parties signing, and not the common seal of the corporation. The attestation clause is conclusive of this point, and as the corporation could only convey under its corpoorate seal, the assignment is necessarily inoperative as the foundation of any right or claim to the corporate property. A corporation may alter its seal at pleasure, and may adopt as its own the private seal of an individual if it chooses to do so, but when adopted it must be used as the seal of the individual, it cannot be treated as that of the corporation, and a declaration in the instrument that it is so affixed is conclusive of its character and effect. Brown, et al., v. Farmer's Supply Depot Co., et al., 23 Ore. 541, 32 Pac. 548; Richardson v. Scott River W. & M. Co., 22 Cal. 150; Shackleton v. Allen Chapel African. M. E. Church, 25 Mon. 421, 65 Pac. 428; Combe's Case, 9 Co. Rep. 75 (a), 76 (b), 77 Reprint 843, 847; Brinley v. Mann, 2 Cushing (Mass.) 337, 48 Am. Dec. 669; Notes to Am. Dec., Vol. 7, page 450. See also Campbell v. McLaurin Investment Co., 74 Fla. 501, 77 So. 277.

However, it has frequently been held that a mortgage is but an incident to the debt, the payment of which it secures, and its ownership follows the assignment of the debt. If the note or other debt secured by a mortgage be transferred without any formal assignment of the mortgage, or even a delivery of it, the mortgage in equity passes as an incident of the debt, unless there be some plain and clear agree-

ment to the contrary, if that be the intention of the parties. Jones, on Mortgages, Vol. 2, Sec. 1033; Collins v. W. C. Briggs, Inc., 98 Fla. 422, 123 So. 833; Miami Mortgage & Guaranty Co. v. Drawdy, 99 Fla. 1092, 127 So. 323.

The renewal note signed by Pearl M. Brown alone was, of course, void. Although an action may not be maintained on the note itself, it can be used in the foreclosure proceedings as evidence of the amount of the unpaid indebtedness and the terms on which the loan was made. National Granite Bank v. Tyndale, 176 Mass. 547, 57 N. E. 1022.

Although the assignment of the mortgage from Everglade Lumber Company to Gillian was defectively executed, it may be taken as evidence to show that the company had, before the commencement of the suit, sold and transferred to Gillian its entire interest in the note and mortgage. Dougherty v. Randall, 3 Mich. 571. A mere delivery of a note and mortgage, with intention to pass the title, upon a proper consideration, will vest the *equitable* interest in the person to whom it is so delivered. Daly v. New York & G. L. Ry. Co., *et al.* (N. J.), 38 Atl. 202.

"The transfer of the note or obligation evidencing the debt being as a general rule the equivalent of the assignment of the debt itself, such transfer operates as an assignment of the mortgage securing the debt, and it is not necessary that the mortgage papers be transferred, nor, in order that the beneficial interest shall pass, that a written assignment be made." 41 C. J., Mortgages, Sec. 686, pp. 673.

"Generally speaking, wherever it was the intention of the parties to a transaction that the mortgage interest should pass, but a written assignment was not made, or else the writing was insufficient to transfer the legal title to the security, equity will effectuate such intention and invest the

intended owner of the mortgage with the equitable title thereto." 41 C. J., Mortgages, Sec. 691, pp. 677.

Any form of assignment of a mortgage, which transfers the real and beneficial interest in the securities unconditionally to the assignee, will entitle him to maintain an action for foreclosure. See Jones on Mortgages, (8 Ed.), Sec. 1029, and cases cited. Or if there had been no written assignment, Gillian would be entitled to foreclose in equity upon proof of his purchase of the debt. Pease v. Warren, 29 Mich. 9, 18 Am. Rep. 58.

In the foreclosure proceedings appellee Gillian gave the following testimony in regard to the transfer of the debt owed by the Browns to Everglade Lumber Company:

"MR. DAVIS: Q. And who is the owner of this note at the present time?

"MR. MARTIN: Object to the question, it calls for the conclusion of the witness.

"WITNESS: A. I am.

"MR. DAVIS: Q. How did you acquire the note? A. Bought it from the Everglade Lumber Co.

"Q. And did they give you any evidence of the sale of the note? A. Well, they assigned the note to me. I don't just understand the question.

"Q. Did they give you any written evidence of the transfer of the note to you? A. Well, when I take over papers of that kind the officers of the company transfer it as they do in any transaction."

And upon cross-examination by Mr. Martin, Gillian testified as follows:

"Q. Did you ever see any deed of conveyance of any sort to that property from any person? A. Why the lumber company conveyed their interests to me, whatever it is.

"Q. Did you or the lumber company, one of the two

have a deed to the property from the Browns or some other person? A. Well, it isn't my understanding, with the exception of the mortgage deed, that we had. We had a mortgage there.

"Q. You told Mr. Johns here that you owned the property didn't you when you put him in possession? A. No.

"Q. How long before Mr. Johns went into possession was it that you took possession of the property? A. I don't know exactly, we made some transfers, at least things went to pieces, and I put up some money for the company, and they gave me as security that property and other stuff. I was trying to carry the company along, and that was the time that that happened.

"Q. When did you become the owner of this mortgage then? A. It was back probably in 1927 or '28. That was the time we had the trouble. That was when they transferred a bunch of the stuff to me as security. I could find out by going to the records.

"Q. When you started this case last winter, you told your attorney that the Everglade Lumber Co. owned that mortgage, did you not? A. Well, I think the mortgage is made out to me, or something to that effect.

"Q. But you owned the mortgage from 1927? A. Yes, down to date, from whatever time the transfers were made, of bunch of securities, I don't remember what time it was, I just don't remember."

The testimony as to the assignment of the debt and other securities was uncontradicted. We are of the opinion that this was sufficient to constitute Gillian the equitable owner of the mortgage and entitle him to foreclose the same.

Appellants further contend that irrespective of where the ownership of the alleged mortgage reposes, the fact that appellants made valuable improvements on the mortgaged property at the request of Gillian, who represented himself

to be the owner of the property, gives appellants an equity in the property to the extent of the value of the improvements, that is superior to the rights of the holder of the mortgage. This contention is based upon allegations and testimony that Gillian represented himself to be the owner of the property in question and Johns, without knowledge of the real state of the title, was misled by these misrepresentations. However, Gillian denied that he made such representations and contended that his understanding with Johns was that he (Johns) could move into the property involved herein and repair it during his spare time, that Gillian would furnish the materials, and that Johns could apply whatever charge he made for services on the rent.

The decree of the Court below could not have been rendered denying appellant Johns the right to compensation for his alleged improvements unless the Chancellor found that Gillian had not represented himself to be the owner of the property and Johns made the improvements with knowledge of the true state of the title. Because of the fact that the evidence upon the question of appellee Gillian's representations as to his ownership of the property involved herein was conflicting, we cannot say the conclusion of the Chancellor was clearly erroneous. Smith v. Hollingsworth, 85 Fla. 431, 96 So. 394.

The rule as to when an equitable lien arises by implication for improvements or benefits to property is set out as follows in 37 C. J. 321, Liens, Sec. 26:

"An equitable lien on the property benefited has been held to arise where a person in good faith, and under a mistake as to the condition of the title, makes improvements, renders services, or incurs expenses that are permanently beneficial to another's property. But there is no such lien where the expenditures are made with knowledge of the

real state of the title; nor will such a lien arise where there is an adequate remedy at law."

And in a note in Ann. Cas. 1916B, 57, it is stated:

"As a corollary of the rule that an occupying claimant ousted by a paramount title can recover for such improvements only as are made under a *bona fide* belief in his own title, many decisions have announced the broad proposition that no recovery can be had for improvements made with actual notice of the existence of an adverse claim which subsequently proves to be superior to that of the occupant."

Notice in this connection does not mean direct and positive information; but anything calculated to put a man of ordinary prudence on the alert is notice. Note in Ann Cas. 1916B, 59; Lee v. Bowman, *et al.,* 55 Mo. 400.

Appellant Johns in his testimony stated that when he first started to make repairs on the property he went to Mr. Moore, the Tax Collector, at the request of the appellee Gillian to get a tax statement on the property, and that Mr. Moore informed him that appellee Gillian did not own the property. This was clearly sufficient to put a man of ordinary prudence on the alert.

The facts, as found by the Chancellor and by which we are bound, are that Gillian did not represent himself to be the owner of the property in question, that Johns had knowledge of the real state of the title, and that the improvements were made subsequently to Johns' acquisition of such knowledge. Under these facts the cases cited by appellants in their brief based upon the alleged fraudulent representations of Gillian are not controlling. The decree of the Circuit Court is therefore affirmed.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.