678 So.2d 1310 (1996)
A.M. HOCHSTADT, as last remaining director of Interlaken Development Corporation, Appellant/Cross-Appellee,
v.
Wayne A. GERL and Susan G. Gerl, Appellees/Cross-Appellants,
v.
RESOLUTION TRUST CORPORATION, as conservator of AmeriFirst Bank, and The Sanctuary Homeowners Association, Inc., Appellees.
No. 94-1555.
District Court of Appeal of Florida, Fourth District.
June 5, 1996.
Order Denying Clarification September 4, 1996.
*1311 J. Steven Warner of J. Steven Warner, P.A., Fort Lauderdale, for appellant/cross-appellee.
No brief filed for appellees/cross-appellants.
J. Michael Haygood of Mack, Williams, Haygood & McLean, P.A., Boca Raton, for Appellee-Resolution Trust Corporation.
Daniel S. Rosenbaum and Karen E. Roselli of Becker & Poliakoff, P.A., West Palm Beach, for Appellee-The Sanctuary Homeowner's Association, Inc.
STEVENSON, Judge.
This is an appeal from a final judgment of mortgage foreclosure. The primary issue in this appeal is whether the trial court should have included the name of the assignee of certain real estate taxes in the final judgment. Because the assignment agreement, and the parties thereto, were all properly before the court in the foreclosure litigation, we find that the trial court erred in failing to specifically award the taxes to the assignee in the final decree.
The Gerls owned a house in a development called "the Sanctuary" in Boca Raton. AmeriFirst held a first mortgage (first in priority) on the property for $280,000; AmeriTrust held a junior mortgage for $1,050,000 which was subsequently assigned to Interlaken Development Corporation. When the Gerls defaulted on their loan, AmeriFirst filed a foreclosure suit naming the Gerls, Interlaken and A.M. Hochstadt (president and last remaining director of Interlaken), as defendants. The Sanctuary Homeowners Association was named as a defendant because of assessment liens. Hochstadt counterclaimed, alleging among other things, that AmeriFirst had failed to diligently prosecute the foreclosure or protect the property, thus reducing the surplus that would be available to Interlaken as a junior mortgage holder.[1] The Resolution *1312 Trust Corporation (RTC) was later substituted for AmeriFirst as a conservator.
In a settlement agreement, Hochstadt agreed to dismiss his counterclaim and the RTC agreed to assign certain rights to Hochstadt that RTC had in connection with the property. The agreement provided that RTC assigned to Hochstadt:
"[A]ll of Assignor's claims ... against Sanctuary ... and any other person other than Assignor.... This assignment includes claims accruing prior or subsequent to this assignment, including all of Assignor's subrogation rights, whether such rights are express or implied, arising out of or related to the Foreclosure. This assignment also includes all claims against Sanctuary for and all (sic) ad valorem taxes on the property subject to the Foreclosure (the "Subject Property") accruing during the time legal title to the property has been held by Sanctuary (specifically including those taxes paid by Assignor during the pendency of the foreclosure) ..."
At issue are the real property taxes of $18,049.30, $16,373.36 and $19,751.47 which were paid for the years 1990, 1991 and 1992, respectively. It was undisputed that because neither the Gerls nor Sanctuary paid these taxes, AmeriFirst paid them to protect its lien. When AmeriFirst paid these taxes, they became subrogation rights of Ameri-First/RTC. See Mortoro v. Maloney, 580 So.2d 822 (Fla. 5th DCA 1991). The agreement clearly provided that Hochstadt would be assigned any subrogation rights RTC had against Sanctuary or any other party and specifically that Hochstadt would be entitled to "those taxes paid by assignor during the pendency of the foreclosure." When the meaning of a contract is clear on its face, it should be construed as written. Institutional & Supermarket Equip. v. C & S Refrigeration, Inc., 609 So.2d 66 (Fla. 4th DCA 1992). Further, in the instant case, even if there was an ambiguity, it should have been resolved against the RTC, the party who selected the language of the agreement. Security First Federal Savings and Loan Ass'n v. Jarchin, 479 So.2d 767 (Fla. 5th DCA 1985).
Accordingly, because RTC assigned to Hochstadt the right to recover the taxes which were paid before the foreclosure, the trial court abused its discretion in failing to include Hochstadt in the final judgment as the party entitled to receive those funds. The trial court's award of the taxes to "plaintiff or it assigns" was error where the agreement clearly provided that the assignee before the court, and not the plaintiff, was entitled to award of the taxes. A decree in a mortgage foreclosure proceeding must adjudicate all of the issues properly raised in the litigation so that the court may complete justice between the parties. See 37 Fla. Jur.2d, Mortgages and Deeds of Trust § 324 (1982).
This cause is remanded to the trial court so that the final judgment may be modified in accordance with this opinion. We have considered the other issues raised in this appeal and find no error.
Reversed in part and remanded.
GLICKSTEIN and FARMER, JJ., concur.

ON MOTIONS FOR CLARIFICATION
PER CURIAM.
Both motions for clarification are denied. All other motions are moot.
GLICKSTEIN and STEVENSON, JJ., concur.
FARMER, J., concurs specially with opinion.
FARMER, Judge, concurring specially.
The post opinion motions include several motions to strike or dismiss other motions. Such motions are frivolous and waste our time. Appellate courts are not designed to engage in the considerable motion practice of trial courts. I question whether the client should have to pay appellate lawyers for preparing and filing such motions.
*1313 Nor is it necessary to move to strike improper motions for rehearing in this court, not even "to make a record." After we have fully decided a case, most of the judges on this court view motions for rehearing with a generous amount of suspicion. Among the first things we consider is whether they are timely and proper under the rules. Because we issue the mandate when no post opinion motion reaches us by the 16th day after a decision, in many cases we would necessarily have to recall our mandate to consider an untimely post opinion motionsomething we will not lightly do.
Filing motions to strike only increases our work. It spends the time available for deciding other cases. Speaking for myself only, these motions also have the effect of diminishing my ardor for the arguments of lawyers who so squander our attention.
NOTES
[1] Apparently during the pendency of the main foreclosure action, the Sanctuary Home Owners Association filed an independent foreclosure action for unpaid assessments and had taken title to the property. The Sanctuary leased the property back to the Gerls for a period and it was alleged that the property had since fallen into disrepair.