LAWSON, J.
In this foreclosure case, plaintiff Beltway Capital, LLC (“Beltway”) appeals from an “Order Granting Defendant’s Motion to Determine Amounts Due,” finding that Beltway could not seek safe harbor under section 718.116(l)(b), Florida Statutes (2013). This statute limits the liability of “a first mortgagee or its successor or assignees” who acquire title to a condominium unit by foreclosure for unpaid association assessments due before acquisition of title to the lesser of twelve months of assessments or one percent of the original mortgage debt. Instead, the lower court found Beltway liable for all past due assessments because it was not the “original lender” or its successor or assignee. Beltway was not a direct assignee of the original lender.
On appeal, Beltway claims the statute affords safe harbor to “all subsequent assignees of the first mortgage holder,” not just the first assignee. The condo association, The Greens COA, LLC (“The Greens”), argues that safe harbor is limited to “first mortgagee or its ... assignee,” which does not include Beltway because it was not a direct assignee of the original lender. Both the trial court and The Greens erroneously equate the terms “first mortgagee” with “original lender.” The former term is broader than the latter because the word “first” refers to first in priority, not first in time. Thus, a first mortgagee is simply one who owns and holds the note or first mortgage. Beltway is a first mortgagee and is therefore entitled to safe harbor. Accordingly, and for reasons further explained below, we reverse and remand for further proceedings.
Facts and Proceedings Below
In December 2011, Beltway filed a complaint to foreclose a mortgage on a condo unit against the unit owner, Michael Hei-bel, and his condo association, The Greens. Beltway alleged that: (i) in 2006, Heibel delivered a mortgage on the unit to Mortgage Electronic Registration Systems, Inc. (“MERS”), as nominee for First National Bank of Arizona; (ii) in 2011, MERS assigned the mortgage to GMAC Mortgage, LLC (“GMAC”); and (iii) GMAC subsequently assigned the mortgage to Beltway, Copies of the assignments were attached to the complaint. The Greens filed an answer and affirmative defenses asserting that Beltway would be liable for unpaid condo association assessments under section 718.116(1), Florida Statutes (2011).
Heibel defaulted. Beltway obtained a Final Judgment of Foreclosure and purchased the home at a foreclosure sale. The Greens filed a motion to determine the amounts it was due, specifically seeking a determination of whether Beltway was entitled to safe harbor under section 718.116(l)(b) as a first mortgagee or a subsequent holder of the first mortgage. Following a hearing on the motion, the trial court entered an “Order Granting Defendant’s Motion to Determine Amounts Due,” finding as follows:
2. Section 718.116(l)(b), Florida Statutes, only includes the original lender, the lender’s successor, and the lender’s *332 assignee as parties qualifying for the narrow liability exception.
3. The Plaintiff, Beltway Capital, LLC, is the assignee of the assignee and does not qualify for the liability exception.
4. The Plaintiff has failed to pay any amounts due, including amounts coming due before and after issuance of the Certifícate of Title on or about May 12, 2012.
5. The Plaintiff is subject to the requirements of section 718.116(l)(a), Florida Statutes.
6. The Defendant is entitled to recover reasonable attorney’s fees in litigating this action. The court reserves jurisdiction to determine the amount pending an evidentiary proceeding, if necessary.
Beltway timely appealed, asserting that the above order was final.
After the appeal was perfected, this court issued an order to show cause as to why it should not be dismissed for lack of an appealable order. Because the order did not determine the actual amounts due, it contemplated further judicial labor and was therefore not a final order nor an appealable non-final order. The parties responded and improperly attempted to stipulate that this court had jurisdiction. See, e.g., Polk Cnty. v. Sofka, 702 So.2d 1243, 1245 (Fla.1997) (holding that parties cannot confer subject matter jurisdiction on district court where none exists). This court relinquished jurisdiction for forty-five days to allow the lower court to enter a final appealable order. On November 4, the lower court entered a final judgment, giving this court jurisdiction to review the issue.
Standard of Review
A trial court’s interpretation of a statute presents a pure issue of law subject to de novo review on appeal. Fla. Dep’t of Children & Family Servs. v. P.E., 14 So.3d 228, 234 (Fla.2009); Kasischke v. State, 991 So.2d 803, 807 (Fla.2008).
Merits
Section 718.116(l)(a), Florida Statutes (2012), part of the Condominium Act, not only makes a condominium unit owner liable for association assessments that come due while he or she is the owner, but also makes the unit owner jointly and severally liable with the previous owner for all unpaid assessments that came due before transfer of title. Subsection (l)(b) carves out a safe harbor provision, however, by limiting the liability of a “first mortgagee or its successor or assignees” who acquire title by foreclosure, or a deed in lieu of foreclosure, to the lesser of those common expenses and regular assessments that came due in the twelve months preceding acquisition of title or one percent of the original mortgage debt. See also Bay Holdings, Inc. v. 2000 Island Blvd. Condo. Ass’n, 895 So.2d 1197, 1197 (Fla. 3d DCA 2005) (noting that section 718.116(1) is a “safe harbor provision” that “provides a statutory cap on liability of foreclosing mortgagees for unpaid condominium assessments that become due prior to the first mortgagee’s acquisition of title pursuant to a foreclosure proceeding”).[1] Subsection (l)(g) further states that: “For purposes of this subsection, the term ‘successor or assignee’ as used with respect to a first mortgagee includes only a subsequent holder of the first mortgage.”
*333 The issue of statutory construction before this court — whether the safe harbor provision protects entities such as Beltway, which have not taken title from the original lender — appears to be one of first impression in Florida’s appellate courts. The trial court construed the provision granting safe harbor to the “first mortgagee or its successor or assignees” as meaning “the original lender, the lender’s successor, and the lender’s assignee.” Beltway claims that the plural term “assignees” includes “all subsequent assignees of the first mortgage holder,” not just the first assignee. The Greens essentially adopts the trial court’s construction, arguing that safe harbor is limited to “first mortgagee or its ... assignee,” which does not include Beltway because it was not a direct assignee of the original lender.
Beltway correctly notes that the first fatal flaw in both the trial court and The Greens’ construction of the statute is their equation of “first mortgagee” with “original lender.” Neither section 718.116 nor any other part of the Condominium Act define the term “first mortgagee.” Black’s Law Dictionary defines the term “first mortgage” as “[a] mortgage that is senior to all other mortgages on the same property.” Black’s Law Dictionary 1102 (9th ed. 2009). In contrast, a “second mortgage” is one “that is junior to a first mortgage on the same property, but that is senior to any later mortgage.” Id. at 1103. A “mortgagee” is “[o]ne to whom property is mortgaged; the mortgage creditor, or lender. — Also termed mortgage-holder.” Id. at 1104. Thus, a “first mortgagee” is simply one who holds the first mortgage, whether that be the original lender or a subsequent holder. The modifier “first” refers to priority of lien, not necessarily to the first in time. Cf. Hochstadt v. Gerl, 678 So.2d 1310, 1311 (Fla. 4th DCA 1996) (“AmeriFirst held a first mortgage (first in priority) on the property for $280,000.”). For example, a person who acquires a first mortgage from the original lender after a second mortgage has been executed is still considered a first mortgagee because he or she holds a higher priority mortgage despite acquiring it later in time.
Because Beltway held the mortgage when it acquired title by foreclosure, it was entitled to safe harbor as a “first mortgagee” without further regard to whether it was also an assignee. See Park v. Fed. Nat’l Mortg. Ass’n, 2014 WL 2742947 (Fla. 9th Cir. May 28, 2014) (“Regarding the third element [first mortgagee or its successor or assignees], the Court finds Fannie Mae was the first mortgagee because it owned the Loan secured by the Mortgage. The owner of the debt securing a Mortgage is the first mortgagee.”); Fed. Nat’l Mortg. Ass’n v. Countryside Master Ass’n, 2012 WL 6916812 (Fla. 20th Cir. Oct. 3, 2012) (“Based on its acquisition of the first mortgage [by purchase of note], Fannie Mae was a first mortgagee.”); see also The Plantation at Ponte Vedra, Inc. v. U.S. Bank, N.A., No. CA13-1072, 2014 WL 786346 (Fla. 7th Cir. Feb. 5, 2014) (“At some point thereafter, U.S. Bank became the mortgagee as holder of the mortgage. U.S. Bank stands in the shoes of the original mortgagee for the purposes of this action.”); cf. Bermuda Dunes Private Residences v. Bank of Am., 133 So.3d 609, 616 (Fla. 5th DCA 2014) (finding that when Bank of America assigned note and mortgage to Federal Home Mortgage Corporation (“FHMC”), FHMC had “succeeded Bank of America as the first mortgagee”).
In the Ninth Circuit order cited above, Judge Miller further correctly explained why a non-direet assignee of a note is also an assignee of the mortgage as a matter of law. After finding that Fannie Mae was a first mortgagee entitled to safe harbor be *334 cause it owned the loan secured by the mortgage, the court made the following alternative finding:
Alternatively, Fannie Mae is also the assignee of the first mortgagee!!] Florida law has long held that a mortgage is just an incident to. the debt, and the assignee of the debt owns the mortgage-regardless of whether, there was a formal assignment, “[A] mortgage is but an incident to the debt, the payment of which it secures, and its ownership follows the assignment of the debt.” Johns v. Gillian, 134 Fla. 575, 184 So. 140, 143 (1938); see also Margiewicz v. Terco Prop, of Miami Beach, Inc., 441 So.2d 1124, 1125 (Fla. 3d. DCA 1983)[.] So, when Fannie Mae purchased the Loan, it became the assignee of the first mortgagee by operation of law.
Park, 2014 WL 2742947, at *2.[2] Thus, regardless of whether there had been' a formal assignment of the mortgage, Fannie Mae was both a first mortgagee and an assignee of the first mortgagee, by operation of law, because it owned the loan. The court added:
In making this decision, this Court joins the long line of trial courts to find Fannie Mae was entitled to safe harbor under similar circumstances. See Fed Nat’l Mortg. Ass’n v. Kensington of Royal Palm Beach Condo., Ass’n, Inc., 2012 WL 2365268 (Fla. 15th Cir.2012); Oriole Golf & Tennis Club Condo., One J Ass’n, Inc. v. Calbo, No, 03-CIV-21883, 2004 WL 6039691 (S.D.Fla., Jan. 22, 2004) (Hoeveler, J.,); Fed Nat’l Mortg., Ass’n v. Countryside Master Ass’n, Inc., Case No 12-1790-CA, 2012 WL 6916812 (Fla. 20th Cir.2012) (Order dated Oct. 3, 2012); Coral Springs Townhomes II Condo, Ass’n, Inc. v. Fed. Nat’l Mortg. Ass’n, Case No. 12-CA-25485 (08) (Fla. 17th Cir.2012) (Order dated Apr, 22, 2013); The Hamptons at Metrowest Condo. Ass’n, Inc. v. Fed Nat’l Mortg Ass’n, Case No. 2011-CA-15322-0, 2011 WL 8119337 (Fla. 9th Cir.2011) (Order dated May 17, 2012); Avanti Condo. Ass’n, Inc. v. Fed Nat’l Mortg. Ass’n, Case No. 16-2012-CC-009329 (Duval Cnty. Ct.2012) (Order dated May 23, 2013).
Id. The above cases demonstrate that when section 718.116(l)(b) is viewed within the broader context of mortgage law, an assignee of the first mortgagee is created by operation of law through ownership of the loan, not by written assignment of the mortgage, much less direct written assignment from the original lender.
Finally, The Greens makes an equitable argument for limiting the safe harbor provision to direct assignees of the original lender. It claims that it would be unfair to punish innocent unit owners (who must absorb unpaid assessments through higher future assessments) “for the non-payment of a financial entity who took title to the unit knowing it would have to pay assessments but chose not to do so.” The Greens then accuses Beltway, without record citation, of not only failing to pay the past assessments in question, but also assessments accruing after it took title to the condo. Beltway claims, also without rec *335 ord citation, that The Greens’ argument is “outlandish” because it has tried repeatedly to pay the current assessments, only to be refused by a demand to pay all past due assessments. As a result; Beltway has been unable to convey the property to a buyer because of The Greens’ outstanding lien. In addition to being outside the record, such equitable arguments must yield to the law. Fla. High Sch. Athletic Ass’n v. Melbourne Cent. Catholic High Sch., 867 So.2d 1281, 1291 (Fla. 5th DCA 2004) (“[T]he first principle of equity jurisdiction is that equity follows the law. Courts of equity simply have no power to issue rulings which they consider to be in the best interest of justice without regard to established law.” (internal quotations and citations omitted)).
Accordingly, we reverse the final judgment and remand for entry of a judgment consistent with this opinion, which recognizes that Beltway is entitled to benefit from the safe harbor provision of section 718.116(l)(b), Florida Statutes (2018).
REVERSED AND REMANDED.
COHEN and LAMBERT, JJ., concur.

. The legislature has enacted similar safe harbor provisions relative to homeowners associations and timeshares. See § 720.3085, Fla. Stat. (2014) (limiting liability of "first mortgagee, or its successor or assignee” who acquire title to property subject to HO A from unpaid assessments): § 721.15(8), Fla. Stat. (exempting "first mortgagee or its successor or assignee” who acquire title to timeshare unit by foreclosure from unpaid assessments).

. In Johns, the Florida Supreme Court further explained,
"The transfer of the note or obligation evidencing the debt being as a general rule the equivalent of the assignment of the debt itself, such transfer operates as an assignment of the mortgage securing the debt, and it is not necessary that the mortgage papers be transferred, nor, in order that the beneficial interest shall pass, that a written assignment be made.”
Johns, 184 So. at 143 (quoting 41 C.J., Mortgages, § 686, p. 673). This is still the law of Florida. See, e.g., Deutsche Bank Nat’l Trust Co. v. Clarke, 87 So.3d -58, 61 (Fla. 4th DCA 2012).