# Third District Court of Appeal

## State of Florida

Opinion filed October 3, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-370
Lower Tribunal No. 09-55435
_____

## Federal National Mortgage Association,
Appellant,

vs.

## JKM Services, LLC, as Receiver for Cedar Woods Homes Condominium Association, Inc.,
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Samantha Ruiz-Cohen, Judge.

Levine Kellogg Lehman Schneider + Grossman and Jeffrey C. Schneider and Marcelo Diaz-Cortes; Greenspoon Marder and Aaron T. Williams (Fort Lauderdale), for appellant.

Shir Law Group and Stuart J. Zoberg and Guy M. Shir (Boca Raton), for appellee.

Before SALTER, EMAS and LINDSEY, JJ.

SALTER, J.

Federal National Mortgage Association ("FNMA") appeals a final circuit court order denying its motions to intervene in, and to terminate, a receivership proceeding insofar as it affected three condominium units recently subject to FNMA foreclosure proceedings, and to determine the amount owed by FNMA to Cedar Woods Homes Condominium Association, Inc., the appellee ("Association"), under the so-called "Safe Harbor Statute," section 718.116(b), Florida Statutes (2014). FNMA's motions presented the circuit court, and now present us, with several novel issues that arose within condominium associations in the real estate downturn and foreclosure crisis of the past decade.

Based on the analysis which follows, we are constrained to reverse the orders denying relief to FNMA, and to remand the receivership case to the trial court for further proceedings.

I.    Background and Proceedings in the Circuit Court

In this case, the Association reached a point in 2009 where over ninety percent of its 165 condominium units were delinquent in assessment payments, and the majority of those units were also in foreclosure. The Association needed the assessments to cover repairs, maintenance, and capital improvements.

For a variety of reasons, the lenders and loan servicers on the units in foreclosure were slow to prosecute their cases. Notwithstanding delays measured in years rather than months, by law the foreclosing lenders obtaining title were not

obligated to pay any accrued arrearages for assessments beyond the lesser of "unpaid common expenses and regular periodic assessments which accrued or became due during the 12 months immediately preceding the acquisition of title [by the lender]" or one percent of the original mortgage debt (quoting from the Safe Harbor Statute cited above).

### A. The 2009 Receivership

In law as in engineering, necessity is the mother of invention. In 2009, the Association filed an emergency petition in the circuit court seeking the appointment of a receiver to preserve and protect the condominium property in light of the overwhelming delinquency rate by unit owners. The Association claimed, and a magistrate judge found, that the great majority of units were subject to bank foreclosure actions, with several units "abandoned and vacant for as long as two years." The property manager's affidavit in support of the petition reported that the Association appeared to be insolvent and had received final notices that water, common area electricity, and garbage service would soon be terminated.

The Association's petition was based on a provision of the Condominium Act, section 718.116(6)(c), Florida Statutes (2009):

> If the unit is rented or leased during the pendency of the foreclosure action, the association is entitled to the appointment of a receiver to collect the rent. The expenses of the receiver shall be paid by the party which does not prevail in the foreclosure action.

3

The petition sought the appointment of a receiver "over those units subject to foreclosure actions or soon-to-be-filed foreclosure actions by the Association to collect unpaid assessments" and to "(a) collect rents due to unit owners currently being sued by the Association to foreclose assessments liens; (b) hire a management company to manage, maintain and lease units subject to assessments lien foreclosures; (c) hire a locksmith to break door locks and change door locks to vacant units subject to assessments lien foreclosures; (d) lease or rent units and evict non-paying tenants; (e) contract with contractors to repair and maintain units subject to foreclosure lien assessments; and [pursue other relief as permitted by the court]."

After various hearings and orders, in 2010 the trial court appointed a receiver ("Receiver") to manage and preserve all "Foreclosure Rented Units" and "Foreclosure Abandoned Units," with assessments delinquent for sixty days or more and subject to foreclosure by the Association. The Receiver was to collect all rental income from such units, initiate eviction for non-payment of rent on such units, and use the collected income to pay back-owed assessments, the Receiver's costs and expenses, and "any and all expenses associated with the Condominium."

The emergency petition for the appointment of the Receiver was filed by the Association and as a separate action. It did not join or name the owner or mortgagee of any unit as a party when filed. A magistrate judge recommended

4

relief regarding the Association's petition, and the circuit court entered orders appointing the Receiver and expanding the Receiver's authority. The orders relating to the Receiver did not attach property descriptions or otherwise place the mortgage lenders in this case on notice of the Receiver's powers.[1]

B.  FNMA's Title to Three Units

The three condominium units at issue in this appeal, each within Cedar Woods Homes, are identified as Unit 10-105, Unit 10-102, and Unit 17-103. Each was subject to a recorded mortgage ultimately owned by FNMA. Each of the mortgages was recorded in 2006, years before the commencement of the receivership by the Association. The foreclosing plaintiffs (in three separate circuit court foreclosures) were GMAC in April 2009 (Unit 10-105); Nationstar Mortgage in 2012 (Unit 10-102); and Bank of America in 2013 (Unit 17-103). These entities held and serviced the mortgage loans on behalf of the owner, FNMA.

Apparently unaware of the Receiver's appointment and powers, the foreclosing lenders did not move to intervene in the separate receivership proceeding during the pendency of their respective foreclosure cases. Similarly, the Receiver never asserted liens or other claims against the foreclosing mortgagees during the pendency of the three foreclosure cases. Final judgments of

---

[1] The Association sent written notice of the emergency petition for appointment of a receiver to individual unit owners two months after commencing the case.

5

foreclosure were entered in all three cases, the three units went to foreclosure sale by the clerk, and FNMA received certificates of title in 2014.

After FNMA obtained title, it requested an estoppel certificate from the Association to pay the amount dictated by the Safe Harbor Statute for each unit. But the Receiver responded on behalf of the Association with a much more substantial, itemized demand for multiple years of past-due assessments, Receiver's fees, attorney's fees for the Receiver's attorneys, and other charges.

C.    FNMA's Motions to Intervene in the Receivership Case

After attempts to negotiate a settlement with the Receiver and Association, in 2016 FNMA filed motions to intervene in the 2009 receivership case, to terminate the receivership as to each of the three units, to determine amounts due under the Safe Harbor Statute, and to compel an accounting and quarterly financial reports by the Receiver. The circuit court denied the motions as to all three units, finding FNMA waited too long to seek relief, "became subject to this receivership" on obtaining title in 2014, and accepted the benefit of work performed by the Receiver. The trial court also found that "receiver amounts" were payable by FNMA above and beyond the condominium unit assessments capped by the Safe Harbor Statute. This appeal followed.

II.    Analysis

6

We address, in turn, a collection of four issues with varying standards of review and sources of controlling authority.

### A. Intervention

**Was FNMA entitled to intervention in the receivership case under Florida Rule of Civil Procedure 1.230?**

The trial court denied FNMA's motions to intervene as moot, concluding that FNMA became subject to the receivership as a party when it received certificates of title to units subject to the receivership proceeding. Rulings on motions to intervene are reviewed for an abuse of discretion. Union Cent. Life Ins. Co. v. Carlisle, 593 So. 2d 505, 507 (Fla. 1992).

The receivership had not concluded, and the Receiver had not been discharged, when FNMA sought intervention. FNMA clearly had a direct (ownership) interest in the three units; the Receiver claimed a lien and assessment and other amounts substantially in excess of the amount computed by FNMA. These factors supported intervention. Id. at 507-08. Although we do not agree that FNMA's motion to intervene was unnecessary or moot because FNMA "became subject to this receivership" upon taking title to the units,[2] the trial court correctly concluded that FNMA's motions should be heard and determined.

---

[2] In the order under review—which was prepared and submitted by counsel for the Receiver—FNMA is characterized as if a third-party purchaser at a foreclosure sale "who does not need to intervene under Rule 1.230 in order to have standing to appeal" (quoting Arsali v. Deutsche Bank Nat'l Tr. Co., 82 So. 3d 833, 835 (Fla.

B.      Validity of the Receivership Orders as Against FNMA

**Were the receivership orders valid as against FNMA?**

The trial court's authority to appoint a receiver for condominium units in arrears on condominium assessments, whether by statute or as a matter of equity and common law, is a legal issue reviewable under the de novo standard of review, but the decision to appoint a receiver is reviewed for an abuse of discretion. Puma Enters. Corp. v. Vitale, 566 So. 2d 1343, 1344 (Fla. 3d DCA 1990).

As already noted, the Condominium Act expressly authorizes the appointment of a receiver to collect rent payable by the occupant of a unit during the pendency of "the foreclosure action." § 718.116(6)(c). When read in context, however, this refers to the foreclosure of a condominium association's lien on a unit "to secure the payment of assessments," section 718.116(5)(a); section 718.116(6)(a) authorizes an action in the association's name "to foreclose a lien for assessments in the manner a mortgage of real property is foreclosed."

So the statutory authority in the Condominium Act for a receiver relates to a unit which has accrued, unpaid assessments, but has been leased by the owner to a tenant. The receiver is then able to collect the rent and apply it (after allowed expenses) to the unpaid assessments. The statutory assessment does not extend to

---

4th DCA 2011), and citing similar cases). Those cases relate to intervention in underlying foreclosure actions rather than the situation presented here. In this case, FNMA was seeking intervention in a separate action, the 2009 receivership case.

8

all units, or all units in pending mortgage foreclosure proceedings, or in foreclosure proceedings which might eventuate after the appointment of the receiver for a specific unit.

Nonetheless, Florida common law provides substantial authority for the appointment of a receiver to take custody of real property embroiled in litigation in order to preserve and protect the property as the rights of the parties are determined. See, e.g., Metro-Dade Invs. Co. v. Granada Lakes Villas Condo., Inc., 74 So. 3d 593 (Fla. 2d DCA 2011); see also Fla. R. Civ. P. 1.620. We conclude that the trial court had the authority to appoint a receiver to preserve and protect enumerated units that were in arrears regarding their assessment payments and subject to an Association lien. We need not reach the validity of the receivership orders insofar as they purported to affect units other than the three units involved in this appeal.

This power, whether based on (1) the court's statutory authority conferred by section 718.116(6) of the Condominium Act, or (2) the court's inherent equitable authority, was limited in scope to the owners and occupants of the units subject to an Association lien for unpaid assessments. The Receiver's authority and trial court's jurisdiction in the 2009 receivership case did not automatically implead existing or subsequent lenders foreclosing mortgage loans on units in Cedar Woods Homes. More specifically, FNMA neither authorized the

9

appointment of the Receiver nor agreed to compensate the Receiver and Receiver's attorneys for any work they may have done.

            C.      <u>Validity and Priority of the Parties' Claims</u>

**As between the Receiver's claims regarding each of the three units and FNMA's final judgment lien and certificate of title, which of the Receiver's claims are valid and enforceable against the units, and if so, what is the extent and priority of each claim?**

The priority of lien claims in real estate as between condominium associations for assessments and foreclosing mortgage lenders is governed by statute, and our review is de novo. <u>U.S. Bank Nat'l Ass'n v. Farhood</u>, 153 So. 3d 955, 958-59 (Fla. 1st DCA 2014).

These issues are generally determined by the operation of sections 28.222, (regarding clerks of court, official records, and register of recorded instruments), 695.11 (sequence per official records book and page to determine priority), and 695.01 (conveyances, transfers, or mortgages of real property, or of any interest therein, required to be recorded to establish priority "against creditors or subsequent purchasers for a valuable consideration and without notice"). <u>City of Palm Bay v. Wells Fargo Bank, N.A.</u>, 114 So. 3d 924, 927 (Fla. 2013).

Applying these statutes and the particular provision governing liens for condominium assessments vis-a-vis first mortgages of record (section

718.116(5)(a)), the FNMA mortgage liens enjoyed priority over the condominium assessment liens, save for (1) those arrearage amounts for which the mortgage lenders became responsible under the Safe Harbor Statute, and (2) duly-imposed Association assessments for the period commencing with FNMA's certificate of title and continuing through FNMA's subsequent conveyance of title, if that has occurred.

The Receiver's compensation, attorney's fees, and costs, are payable by the non-prevailing party if the receivership was commenced under subsection 718.116(6). Paragraph (c) of that provision specifies that the expenses of a receiver appointed pursuant to that statute "shall be paid by the party which does not prevail in the foreclosure action."

In the case of a common law receivership established for the preservation and protection of property involved in a pending lawsuit, the "courts are generally vested with considerable discretion in determining who shall pay the cost and expenses of receiverships," though "[r]eceivership fees, being a part of costs, follow the result of the suit." Barredo v. Skyfreight, Inc., 430 So. 2d 513, 514 (Fla. 3d DCA 1983). Where there are no remaining assets in a receivership from which to make payments, "such costs, if recoverable at all, must be recovered in a separate action for that purpose." Id.

11

Under either of these scenarios and sources of authority, FNMA did not move for the Receiver's appointment and was not a party to the 2009 receivership lawsuit until its interests in intervention were asserted by motion. FNMA thus has no apparent obligation on this record to pay the Receiver and related receivership expenses.[3]

D.     Extent of the Association's Claim: the Safe Harbor Statute

**Is FNMA's liability for condominium assessments during the foreclosure proceedings, and through and including issuance of the certificates of title, limited to the amount computed according to the Safe Harbor Statute?**

For the reasons already detailed in preceding sections of this opinion, the computation of FNMA's "safe harbor" amount is a factual issue that was not addressed by the trial court because of its determination that FNMA's claims were untimely. The amount payable by FNMA to the Association will be a matter for determination by the trial court on remand, although it should be a matter of arithmetic and agreed resolution.[4]

---

[3] One can posit circumstances in which, for example, a foreclosing lender lacking a security interest in rents paid by a non-borrower tenant during the foreclosure case nevertheless received those rents—in derogation of the right of a court-appointed receiver designated under section 718.116(6)(c) to collect those rents. But no such facts are apparent in this record, and we therefore decline to address the merits or outcome of such a hypothetical case.

[4] The Safe Harbor Statute is clear that the liability of FNMA is for the lesser of (a)

FNMA's entitlement to the statutory cap on liability for accrued, unpaid condominium assessments prior to the date it obtained title is well-established. When FNMA initiates a foreclosure in its own name, we have affirmed the application of the Safe Harbor Statute. Catalina W. Homeowners Ass'n v. Federal Nat'l Mortg. Ass'n, 188 So. 3d 76, 81 (Fla. 3d DCA 2016). FNMA's entitlement to the limitation as a loan purchaser and assignee of a final judgment of foreclosure obtained by a servicer on FNMA's behalf is equally well-settled. Beltway Capital, LLC v. Greens COA, Inc., 153 So. 3d 330, 334 (Fla. 5th DCA 2014) ("In making this decision, this Court joins the long line of trial courts to find [FNMA] was entitled to safe harbor under similar circumstances"); see also Hemingway Villa Condo. Owners Ass'n v. Wells Fargo Bank, N.A., 240 So. 3d 104 (Fla. 3d DCA 2018).

### III. Conclusion

The Association's petition for a multi-unit, flexible receivership for abandoned, delinquent, and in-foreclosure condominium units was innovative and

---

"**unpaid** common expenses and regular periodic assessments" that became due during the 12 months immediately preceding FNMA's certificate of title, "**and for which payment in full has not been received by the association**," and (b) one percent of the original mortgage debt. (Emphasis provided). The "one percent" alternative would be considered here because the foreclosing lender "joined the association as a defendant in the foreclosure action." § 718.116(1)(b)1.a., 1.b. On remand, this computation could require an evidentiary hearing to establish the date and amount of unpaid common expenses and assessments during the 12-month period as affected by any rent collections by the Receiver and the manner in which those amounts may have been applied to the unit arrearages.

responsive to a crisis at Cedar Woods Homes. The resulting stand-alone receivership lawsuit, however, is a departure from the traditional adversarial array of parties with disputed claims, liens, and interests in property.[5]

As a result, the Receiver essentially became little more than an officious intermeddler vis-à-vis the foreclosing mortgage lenders, with no authorization to act on behalf of those lenders. The Receiver served as a court-authorized property manager for certain units and also acted as an eviction and collection agency for the Association.

On this record, the receivership expenses were not ratified by the Association for apportionment and assessment to all unit owners as other capital and operating expenses would be, and the Receiver's itemized claims evidence no such apportionment or authorization with the requisite Association corporate formalities.

Due process required notice to the foreclosing first mortgagees before they could be taxed, after the fact, with receivership expenses for services they never sought or authorized. We reiterate, however, that the Receiver's expenditures at the behest of, and for the benefit of, the Association may provide a basis for claims

---

[5] The receivership proceeding in the circuit court is thus styled, In re Cedar Woods Homes Condominium Association, Inc., Petitioner. Until FNMA objected to the Receiver's claims against its three units, the Association and Receiver were the only parties in the case. A successor trial judge (who had not entered the receivership orders) was tasked with the unenviable duty of evaluating and ruling on FNMA's motions in a unique proceeding.

against persons or entities other than FNMA: defaulting unit owners, tenants, or the Association itself, to the extent that the Receiver paid for common area improvements, for example. As no such claims are before us, we express no opinion regarding them.

We reverse the order denying FNMA's motions and remand the case for further proceedings to compute the amount specified by the Safe Harbor Statute. Upon payment of any such amount, FNMA's units are to be released from further claims or proceedings in the receivership case and by the Receiver. As a unit owner from and after the certificate of title, and through its term of ownership, FNMA is responsible for condominium assessments as they become due.

Reversed and remanded for further proceedings.